* Judge Lane
delivered the opinion of the court:
This is a bill in chancery, brought to enforce the specific performance of a contract to make a lease.
In 1819, B. Wells, for certain considerations, received from the treasurer of Stark county, conveyed by a deed, with general warranty, lot No. 30, in Canton, to the then commissioners, to hold for the use of the county, thereon to erect a court-house, offices, etc., and for no other purpose. That deed contained a proviso that it should be void if the lot should be appropriated to any other' purpose. On May 23,1823, Wells released to the commissioners' all his right in reversion in that lot.
On June 28, 1823, the then commissioners agreed to lease to Reynolds, the ancestor of the plaintiffs, thirty feet front, from the west part, for ninety-nine years, renewable forever, at the rent of eighteen dollars per annum, but not to be subjected to any occupation likely to interfere with the due enjoyment of the residue. The agreement also contains a stipulation, that if Reynolds should pay three hundred dollars the lease should be given at a rent merely nominal. Rent has been paid for one year, but the present commissioners refuse to give the lease. During the pendency of the suit Reynolds has died, and the suit is revived in the name of the widow and heirs.
The present commissioners deny the power of the board of 1823, either to make a contract binding upon their successors or to make a valid lease of the corporation land; state the agreement to be, in substance, a contract to convey in fee; that if they had no power tosell .infee they do not possess the power to lease for ninety-nine years, renewablelorever^
A corporation is an artificial person, and by the terms of its creation it possesses the same capacity, to purchase or to sell, that an individual has who possesses the capacity to contract. This doctrine has been long settled, and repeatedly recognized, from a very early period to the present time. Co. Lit. 44, 300, 306; Sid. 162; Com. Dig., title Franchise; 1 Ves. & Beame, 226. Indeed, bo necessarily incidental *is this power, that it has been holden (10 Rep. 1), that a corporation can not be created possessing. *188 the power of holding without the power of disposing; and that a clause in the charter, restricting the alienation of their property without consent of the chancellor, is void. The statutes restraining ecclesiastical and eleemosynary corporations are all the limitations imposed by the laws of England upon the power to sell.
Admitting that civil corporations incidentally possess the power to transfer a good title by deed, it may still be insisted that a person taking the estate holds it subject to the same trusts as while in the hands of the corporation. Perhaps such a trust may sometimes be raised by the terms of the donation. If the land be made subject to uses expressed on the face of the deed, which can not be enjoyed consistentlyvwith the exclusive dominion and enjoyment -of the alienee, pek^aps the trust might be enforced: as where lands wore given to a municipal corporation, to be holden for a common, walk, or public fountain, perhaps the purchaser may take it, subject to the rights of the inhabitants. But the case before cited, from Yesey & Beame, shows that when property held for general corporate purposes is aliened, even for purposes not corporate, such alienation is absolute.
In the present case, the lot was first conveyed by Wells to the commissioners, with a condition to be void in case the lot was appropriated to any other purpose than to erect the court-house and public offices. In 1823, Wells released his reversionary interest to the commissioners, by which, in our opinion, it became their absolute property for general purposes, and subject to alienation by them.
It may be said, that by this construction of their powers the officers of corporations are invested with too large an authority ■ over corporation property, and may waste it or place it beyond the reach of the members, without' remedy. We can not avoid this result. We can relieve in case of fraud, and where a specific trust is raised we can enforce it; but the security against improvidence or bad management must be looked for in the inter.ests, wisdom, and justice of the official agents, and in the relations they sustained to those who conferred the authority.
^Believing that the commissioners possess the powers of .individuals, we enforce contracts against them in the same manner. The execution of this agreement is not an official duty created by law, and therefore properly the subject of a mandamus; *189 but the right springs from contract, to enforce which an appeal1 may be properly made to our general chancery powers.
But the bill seeks to enforce the specific performance to make a1 lease. A lease is personal property, although the present contains a stipulation that it shall be renewable forever, yet any estate; short of freehold, gives the heir no interest. The heirs and widow1 are only parties. The right to be enforced is technically in the ■ administrators; they must be parties complainants before we can finally settle the cause.