## RIGHTS IN PROPERTY DEEDED FOR COUNTY PURPOSES.

[Circuit Court of Summit County.]

### FIRST GERMAN REFORMED CHURCH v. COMMISSIONERS OF SUMMIT COUNTY.

Decided, April Term, 1902.

*Deed Conveying Land in Fee to County—Consideration, the Establishment of a Seat of Justice Thereon—Neither an Abutting Owner or a Private Citizen—Can Enjoin the Building of a Jail Thereon—If Such Use of the Land is a Misuse—The Prosecuting Attorney Only Can Enjoin—Distinction Between Dedication and Grant—Nuisance —Estoppel.*

1. A deed in the usual form, conveying land to county commissioners "in consideration of locating county seat of justice thereon," conveys a complete title to the county for the purposes mentioned.
2. The land having been acquired in full fee and for definite county purposes, private citizens, either as such or as abutting property owners, have no interest therein to protect; and if the property is about to be used for a wrong purpose, the public represented by the prosecuting attorney is the one to intervene by injunction.
3. Should a jail built on such land be regarded as a nuisance, an action for its abatement could only be brought as provided by the statute—that is, on the ground it is a public nuisance; and for the maintenance of such a suit abutting owners and individuals are not the proper parties.
4. Estoppel will lie against an action to enjoin the doing of a thing where no more than a doubt exists as to the right to do it, and there has been reasonable delay in the bringing of the suit, and lárge expense has in the meantime been incurred, of which the plaintiff may be charged with knowledge.

CALDWELL, J.; MARVIN, J., and HALE, J., concur.

This case is in this court on appeal from the court of common pleas, and it involves the right of the county commissioners to build the new county jail on what is known as the "court house grounds" in the city of Akron, Ohio.

It is claimed by the plaintiffs that the commissioners of the county hold the property upon which the jail is being built in trust for the use of the public at large, and they aver that the dedication of the property was such by Simon Perkins that they

have such an interest in it, both on account of their being members of the public and citizens of the county, and by reason of rights arising to them by reason of their property abutting upon the grounds in question, that they have a right to bring this action and have a right to restrain the use of the property for the purposes of the jail.

The rights of the parties to this action grow out of a deed given by Simon Perkins and Nancy Perkins, the wife of said Simon, to the county commissioners on July 11, 1840.

The deed reads as follows:

"Know all men by these presents that we, Simon Perkins and Nancy Perkins, wife of said Simon, of the county of Trumbull in the state of Ohio, in consideration of the location of the seat of justice for the county of Summit in said state, on block No. 26 in the gore between North and South Akron, and in fulfillment of our promises made before and at the time of the location aforesaid to make the following conveyance in case such location should be adopted and agreed upon by the commissioners for that purpose appointed, have bargained and sold and do hereby grant, bargain, sell and convey unto the commissioners of the county of Summit aforesaid and their successors in office the following described pieces or parcels of land in the gore between North and South Akron in the county of Summit and state of Ohio;" and then the descriptions include two pieces of land, which it is unnecessary to recite.

"To have and to hold said premises, with the appurtenances unto the said commissioners of Summit county and their successors in office forever.

"And I, the said Simon Perkins, do for myself and my heirs hereby convenant with the said commissioners and their successors in office, that I am lawfully seized of the premises aforesaid, that the same are free from all encumbrances whatsoever, and that I will forever warrant and defend the same with the appurtenances unto said county commissioners, and their successors in office against the lawful claims and demands of all persons whatsoever.

"Provided nevertheless and the foregoing conveyance is upon these express conditions, viz., that a strip of land four rods in width off from north side of the piece or parcel of land first hereinbefore described, shall be laid open and be forever kept open to the public use for a public highway."

The first piece described in the deed is this land on which the court house stands, including this street on the north. The

second piece is the parcel now occupied by the old jail. That strip of land has been appropriated to the use of the highway by the county commissioners.

"That the residue of said piece or parcel of land first hereinbefore described shall never be appropriated to any other use than that of a public square of suitable dimensions (to be determined by the discretion of the commissioners of said county of Summit for the time being) and a site for the court house and county offices for said county of Summit, with a yard of suitable dimensions (also to be determined by the county commissioners of said county of Summit for the time being) if the county commissioners of said county shall at any time think proper to make such yard separate from the public square, and that the piece or parcel of land secondly hereinbefore described and conveyed (in block No. 27) shall be forever set apart and appropriated as a site and lot for the jail of said county of Summit."

That lot is not involved in this action.

And the same is attested, signed, acknowledged and sealed.

The first question involved in the determination of this case is what title was transferred to the commissioners by this deed of the lands in question?

There is no evidence in the case showing the consideration paid by the county commissioners for the deed, and the consideration is to be determined entirely from the recitals in the first part of the deed, and the recital is, "In consideration of the location of the seat of justice for the county of Summit in said state, on block No. 26 in the gore between north and south Akron, and in fulfillment of our promises made before and at the time of the location aforesaid to make the following conveyance in case such location should be adopted and agreed upon by the commissioners for that purpose appointed."

This is equivalent to saying that the grantor in the deed had agreed with certain commissioners appointed for the location of the county seat in the county and the place where the court house should be built to deed to them the lands in question for the purposes indicated in the deed.

Then the deed has in it in full the language usual in granting a deed: "Have bargained and sold and do hereby grant, bargain, sell and convey unto the commissioners of the county

of Summit aforesaid and their successors in office'' the real estate named in the deed; and the *habendum* clause is, ''To have and to hold said premises, with the appurtenances unto the said commissioners of Summit county and their successors in office forever.'' And the deed contains in it full warranties of title.

The deed, in and of itself, contains all the elements necessary for the conveyance of a fee simple to the county commissioners; and it is not unlike *Avery* v. *United States,* 45 L. B., 144 (104 Fed. Rep., 711). In the conveyance in that case the deed was in the usual words of a fee simple deed and contained covenants of seizin and warranty. The conveying clause, after describing the property, concluded with the words ''as and for a public street of said city,'' and the court in that case say:

''The deed of Leonard Case can not in strictness be regarded as a pure donation. We have no other evidence as to the consideration than that shown by its recitals, and by the ordinance of the city granting to the vendor, in consideration of his conveyance, the right to occupy a portion of the sidewalks upon the four sides of the lot retained by him, and subsequently conveyed to the Cleveland Library Association. His deed recites that the consideration for his conveyance is one dollar, 'and divers other considerations received, to my full satisfaction, of the city of Cleveland.' ''

And the circuit court of appeals held that that granted the fee to the city.

The granting clause, the *habendum,* the warranty and the expression of the consideration in the deed were in character the same as is found in the deed before the court. The restriction in that deed was ''as and for a public street of said city,'' which, in its form and expression, differs somewhat from the deed under consideration; but whether that difference gives rise to a different law in regard to the deed it is not necessary to consider in the view we take of this case. But we regard *Avery* v. *United States, supra,* as quite conclusive on the question that in the deed before the court the county commissioners took a title in fee simple.

In *Smith* v. *Heston et al, Commrs. of Butler County,* 6 Ohio, 101, the facts were not unlike those in this case. The county of Butler was erected in 1803, and commissioners were appointed

to fix the seat of justice therein. Before the place of the seat
for justice was agreed upon, the proprietor of the town of Ham-
ilton proposed to the commissioners, in writing, in case that
town should be selected as the site, "to give, for the use of the
county, a square for public buildings, agreeably to a plan of the
town, etc., also a square for the church and burying-ground, con-
sisting of eight town lots, together with the commons in front
of the town, for public uses, such as boat yards, etc.," and to
"pay two hundred dollars towards erecting of public buildings,
or court house." The county seat was established at Hamilton
and the two hundred dollars paid by the proprietor; but before
the square for the public buildings was conveyed he died.
The court thereafter ordered a conveyance in execution of the
contract, in pursuance of which. the representatives of the pro-
prietor made a deed to the commissioners of the county con-
veying the square for the use of public buildings for the inhabi-
tants of the county of Butler.

Under these facts and the deed given, the case holds, in sub-
stance, the county got a complete title. And we hold in this case
that the granting of these lands by the deed in question was not
a dedication of the lands to the use of the public in general, but
were given to the public for certain and definite purposes so far
as the building of the court house is concerned, in which prop-
erty the public at large took no interest at all as individuals.

In the case last above cited the county commissioners made a
lease of the premises for private purposes, and the action was
brought by persons who claimed individual rights in the grounds
devoted to public buildings and asked an injunction to stay the
proposed leases. A demurrer was filed to the bill, and Judge
Wright, in his opinion, says:

"Unless the complainants have a right, as individuals, to in-
terfere to protect county property, conveyed to it for the use of
public buildings, and restrain the county commissioners, the
agents of the county, from using such property, as in their
judgment may best promote the object of the grant, and the
public interest, the bill must be dismissed. The right to inter-
fere is sought to be sustained from analogy to the class of cases,
where one of many commoners or parishioners seek to restrain
from infringing the common right, or to establish a general

modus. The analogy, in our opinion, does not hold. In those cases, the right to proceed depends on the fact that each commoner or parishioner is injured in his individual rights. In another class of cases where a great number are separately interested in the same subject, one or more, for convenience, and to prevent delay, may litigate the right in chancery, for himself and others interested; and the court having these parties before it will so control as to protect the rights of all concerned. The case before us, does not, in our opinion, belong to either of these classes.

"The present is an attempt, by two or three individuals, to enforce the rights of the county, and guard the county property from forfeiture. This court, in *Putnam* v. *Valentine,* 5 Ohio, 189, has determined, that 'rights purely public, are to be enforced in the name of the state, or the officer entrusted with the conduct of public suits.' If the rights of the county of Butler are violated or threatened, redress must be sought in the name of the county, or its acknowledged agents. There is no pretense in the bill that the complainants have any individual interest in this square, as tenants in common, or otherwise, which they ask us to protect. They are mere volunteers to take charge of the public or county interest, without ever having been entrusted by the county with the performance of such duty."

I have quoted at length from this case because it seems to us very much in point.

And having determined that the parties bringing the action had no right or interest in the property as individuals, either by reason of their having property abutting or in proximity to the public buildings, or as members of the public, the bill was dismissed.

In the case of *Widow and Heirs at Law of Reynolds* v. *Commissioners,* 5 Ohio, 204, the syllabus is:

"Where real estate is vested absolutely in the county commissioners, for public purposes, they may dispose of it in the same manner as individuals could."

In that case, in 1819, B. Wells, for certain considerations received from the treasurer of Stark county, conveyed by a deed, with general warranty, lot No. 30, in Canton, Ohio, to the then commissioners, to hold for the use of the county, thereon to erect a court house, offices, etc., and for no other purpose. That

deed contained a proviso that it should be void if the lot should be appropriated to any other purpose. On May 23, 1823, Wells released to the commissioners all his right in reversion in that lot. The commissioners made an agreement to lease to Reynolds, the ancestor of the plaintiff, thirty feet front from the west part for ninety-nine years, renewable forever, at the rate of eighteen dollars per annum, but not to be subject to any occupation likely to interfere with the due enjoyment of the rest of the land; and, during the pendency of this suit, Reynolds died, and the suit was revived in the name of the widow and heirs. The commissioners denied the right of their predecessors to make the contract of lease and denied that they had any right. The court holds that after the deed was given conveying any right of reversion, or any and all rights in the property, that the county commissioners became the entire owners of the property; and the question was whether the property was in the commissioners in trust by reason of its being a donation of the property. The court say: "If the land be made subject to uses expressed on the face of the deed, which can not be enjoyed consistently with the exclusive dominion and enjoyment of the alienee, perhaps the trust might be enforced. As where lands were given to a municipal corporation, to be holden for a common walk, or public fountain, perhaps the purchaser may take it, subject to the rights of the inhabitants." But the court say "that when property held for general corporate purposes is aliened, even for purposes not corporate, such alienation is absolute."

We understand this case to hold distinctly that there was no trust, either expressed or implied, in the conveyance of this property to the county commissioners, there being no trust to the public, and the property being held by the commissioners for corporate purposes, that they might sell or dispose of it in any manner that to them might seem best.

The first conveyance of Wells to the commissioners had in it a condition that it was to be void in case the lot was appropriated to any other purpose than to erect the court house and public offices. Wells released his reversionary interest to the commissioners by which then it became their absolute property for general purposes, and subject to alienation by them. But

if the first deed placed it in trust in the commissioners and thereby the public at large took an interest in the property, the second deed could not destroy that trust nor subvert the rights of the *cestui que trust,* and the case is in effect holding that the public never had any interest in the property.

In *LeClercq* v. *Trustees,* 7 Ohio (pt. 1), 218, Judge Lane, in this case, seems to mark with clearness the rights of the citizens or residents of a town under the circumstances of these cases cited.

"The fee of lands dedicated to public objects sometimes passes directly to the corporation, for whose use it is intended, and is sometimes held by a corporate town or by a county, in trust for the uses designated. In the first case, as where land is given to a town, for corporate purposes, a vesting by the present statute (29 O. L., 351), or where land is acquired by a county by purchase, or where given for county objects, a vesting by Section 4 of the act of 1800 (2 Ter. Laws, 43), an absolute estate is held by the corporation, which they may alien (*Reynolds* v. *Commissioners,* 5 Ohio, 204), and third persons are not permitted to interfere with the management of its agents (*Smith* v. *Heuston,* 6 Ohio, 101). But when such corporation takes as trustees, to hold to prescribed uses, the *cestui que use* acquires a vested estate, the enjoyment of which may be obtained in chancery. In this case, the land was either vested in the town for the use of the inhabitants, by the general acts of dedication, or it passed to the county by the statute, to be held for this use."

And then the court states that in the case it is in the trustees for the benefit of the public at large, one or more, especially one whose property is affected in value, may enforce the execution of the trust.

In the case of *Avery* v. *United States, supra,* the same law is established by the circuit court of appeals.

The distinction between dedication to the public use and that of grants to individuals, of either estates or easements, differ somewhat in their character, and they differ both in the manner of and evidence of its accomplishment, and in the character of the interest bestowed on the public, as well as in the character of the rights which individuals are privileged to enjoy therein. And it differs also from a grant of lands to the public, as an individual in the organized form of a municipal corporation or

board of county commissioners for the individual use of such corporation. These corporations are authorized to hold lands as individuals hold for the purposes for which they need them in their corporate capacity, and they convey lands thus held for their corporate purposes in the same manner as individuals. The rights embraced in a dedication of land to public use differ from either of the foregoing. In that case the public, as an organized body, has no right to appropriate it, or any part of it, to its individual use; for it has no right, as a corporate body, of property therein. Its rights are passive and not active, and whatever right there is in the property by way of the easement is really vested in the public, and the officers representing the public organization manage it and control it merely as trustees for the public, for whose use it is dedicated.

In the deed of Simon Perkins to the county commissioners, a part of the lands that are to be used for court house purposes and buildings for the officers of the county, and also for the public square, and is to be divided and appropriated to each purpose separately at the will and discretion of the county commissioners. The commissioners have never divided the property any farther than to indicate by what it is now doing, which part it intends for the buildings named in the deed. The intent of the commissioners, if any intent appears, seems to indicate that the court house is to occupy the southerly part of the grounds in question, and the northerly part is to be devoted to a public square. The southerly part is that part against which the property of the plaintiff abuts, and, under the authorities just refered to, when the commissioners have set aside the property on the southerly side for court house and office buildings, or building, then that property being devoted entirely to the purposes of the corporation, as was intended by the grantor in the deed, the plaintiff gets no interest in that property whatever, neither by reason of his property abutting against the same, nor from the fact that he is a member of the public.

If the northerly side of the property is intended for a public square, which is not a use devoted entirely to the public necessities of the county, it is not involved in this action, as the commssioners are not undertaking to build a jail upon that part.

If the southerly part of the grounds are to be devoted to county purposes, then the commissioners can not be restrained for devoting it to county buildings not strictly in harmony with the provisions of the deed. If they are varying from the conditions therein named, it is a matter that does not concern the individuals of the town, whether they suffer peculiar and special damages thereby or not; but it becomes a matter for the public officers, and if they are going contrary to the provisions in the deed, it may be the duty of the county prosecutor to commence an action to restrain such use, but such action is not open to individuals, whether suffering special or general injury thereby.

It is said the building of the jail on the lot is a nuisance. If it is a nuisance, it is a public nuisance, and an individual has not a right to bring an action to abate a public nuisance. The state has provided by law the manner in which such actions may be brought.

If it is contended that there has not been such a separation of the land into building purposes and park purposes that it can be claimed in this case that the south portion of the land is devoted to county purposes, then we are inclined to think that until such division is made there is no action open to individuals. It was the intent of the grantor that the grounds in question should be used in connection with the court house as a court house yard or green, and for county purposes in connection with county business, to insure plenty of light, air, and safety from fire in cases of buildings on adjacent properties burning, and this is important to the county to protect its records; and for public sales, as a place for meeting of the militia, in those days, of the county. The deed provides for the ornamenting of the grounds as a park. The intent is to have the grounds for county purposes, but arranged and beautified as a park, not that this ornamentation should in any way destroy the county use, but to make attractive and inviting the grounds for such use. The primary use and purpose intended was for county purposes, the other is only to add to the pleasure of the primary use. The same purpose is not rebutted by permitting a yard to be fenced off around the court house. This view enables

the county commissioners to accept and hold the deed under the
state (29 O. L., 351), but if deeded for park purposes purely
they could not accept, it is claimed, and we are not prepared to
say they could. These grounds then having been acquired, not
by dedication, but by deed in full fee, and for county purposes,
the plaintiff has no interest in the property. Having no interest
in the property it has no right to protect. If the property is
being used for a wrong purpose, the public, represented by its
proper officer, is the only one to institute suit to protect the
county.

It is claimed in this case, and evidence has been offered to
sustain that claim, that the plaintiff is estopped by reason of
the delay in bringing the action. It is claimed that the county
commissioners had expended some seven or eight thousand dol-
lars upon the erection of the jail; they had let their contracts
and gone to large expense and trouble in and about the mat-
ter, and that the plaintiff remained silent during all that time.

If we are right in our conclusion heretofore that the plaintiff
has no right in any part of the grounds in question, either by
reason of special or general damages done to it, then this matter
of estoppel is not material in this case; but if we are wrong in
that conclusion, and the plaintiff had a right to bring this
action, then its delay has been unnecessary and injurious to the
county commissioners. The advertising and letting of contracts
was of such a public character that they ought to be charged in
this action with notice of the intention of the commissioners to
build the jail upon these grounds long before the time that any
action was commenced or any move made by them looking to a
contesting of the right to the building of the jail where it is.
But it is said that the county knew it had no right, and that it
proceeded knowing that it had no right to build the jail upon
these grounds, and that, therefore, an element of estoppel is
wanting which will defeat the claim of estoppel by the de-
fendant.

But if we are right in what we have said in determining this
case thus far, there was at least a doubtful question whether
the commissioners had not a right to build the jail where they
are now erecting it, and that question was one of so much doubt

that it called to the plaintiff to act without delay, and is not a case where a party enters upon land where he knows he had no right to enter thereon, but it is a case where he may claim that he has a right, and where nothing more than a doubt in regard to the matter can exist, and hence we think the evidences of estoppel are found in this case. And if we are wrong in holding that the plaintiff has no right to bring this action at all, then we hold that he is estopped from insisting that the county has no right to use this land for any purpose in harmony with the general purposes declared in the deed.

It is claimed by defendant that plaintiff will suffer no injury by reason of a jail being built where it is; that its property will not front the jail, but only the rear portion, and the distance will be over twenty feet between the buildings, not counting the extension of the portico on the south side.

In the view we take of this case it is unnecessary to determine this question, but the plaintiffs' loss, if any, will be as nothing almost compared with defendants' loss, if this injunction is allowed. We have determined that the case must be disposed of on the questions that we have herein discussed, and in which we have concluded that the plaintiff has no cause of action, and its petition is dismissed.