# CHARLESTON

LOWTHER v. BRIDGEMAN.

Submitted January 31, 1905.    Decided March 7, 1905.

1. TELEPHONE COMPANIES — *Use of County Roads for Telephones.*
   The word "companies" as used in chapter 96 of the Acts of the Legislature of 1891 includes an individual or individuals as well as incorporated companies. Under that act the county court of a county was authorized to consent to the placing of poles and wires for a telephone for public use along a county road by an individual (p. 309.)

2. TELEPHONE — *County Roads — Abutting Land Owners.*
   A reasonable use of a public highway for the purpose of placing poles and wires for a telephone for public use, under legislative authority, is not an additional servitude upon the fee of the abutting land owner in such highway.   (p. 310).

Appeal from Circuit Court, Wetzel County.

Bill by R. F. Lowther, administrator, and others against B. C. Bridgeman.   Decree for plaintiffs and defendant appeals.

*Affirmed.*

HALL & HALL and J. W. MCINTIRE, for appellant.

CORNETT & NEWMAN, THOS. P. JACOBS, and FRANK V. IAMS, for appellees.

COX, JUDGE:

This is an appeal and *supersedeas* from a decree of the circuit court of Wetzel county perpetuating an injunction against the defendant Bridgeman awarded upon the bill of the plaintiffs, the administrator and heirs of F. P. Lowther.   The injunction restrains the defendant from interfering with the complainants in the erection, construction and maintenance of a telephone line or lines, telegraph line or lines, along the public highway leading from the town of New Martinsville in a northerly direction to the Marshall county line as the same passes  through the farm of the defendant Bridgeman.

The county court of Wetzel county granted or rather consented to a franchise to construct a telephone line upon this public highway to F. P. Lowther in his lifetime.   Its construction was not commenced until after his death.   The

plaintiffs in the extension of their system of public telephone lines completed a line along this highway to defendant's land, and were endeavoring to complete it along such highway where the same passes through defendant's land when they were prevented by the defendant and notified to discontinue the work of construction.

The subject matter of this controversy is a telephone line for public use. The franchise to build it was consented to by the county court of Wetzel county on the 7th day of January, 1896. The authority for such consent is claimed under chapter 96 of the Acts of the Legislature of 1891.

A telephone line for public use is a public utility. Both the telegraph and the telephone have become not only necessary but almost indispensible as vehicles of public intelligence and for the conducting of affairs of business and commerce. They are both instrumentalities of a public character, though they exist for private gain. Their operation in doing a general business is in the nature of a public employment, for they are public or *quasi* public servants. Joyce on Elec. Law section 14. A franchise to operate a telepone is the privilege to operate a public business.

Thompson on Corporations, Volume 4, section 5335, says: "Franchises have been defined to be branches of the royal prerogative subsisting in the hands of the subject by grant from the king. It has been well observed that under our American system and laws this definition is not strictly correct; since our franchises spring from contracts between the sovereign power and private citizen, made upon a valuable consideration, for purposes of public benefit, as well as of individual advantage. Chancellor Kent says that 'franchises are privileges conferred by grants from the government and vested in private indviduals.'" See also *Watson* v. *Railroad Co.*, 49 W. Va. 539, and 14 Am. Eng. Enc. Law 4.

The defendant claims the erection of this telephone line was without authority; that such a franchise cannot be granted to an individual; that it can only be granted to an incorporated company. The language of the act, chapter 96, Acts 1891, is "that telephone companies desiring to extend lines of telephone in this state may place poles for wires along any county road by and with the consent of the county court of the county through which such line may pass," etc.

It may be argued that it is the policy of the law. in West Virginia, under this and other statutes, to grant such franchises only to corporations in order that the performance of public duty may be better required. The performance of a public duty may be compelled when the business is conducted by an individual as fully as when conducted· by a corporation. A corporation is but an artificial person created and limited by the statute. Both the individual and the corporation are subject to the laws governing the business conducted by them. The public duty springs not alone from contract, but it is the result of the character of the business and the laws regulating it. The business is subject to constitutional and legislative control and lawful police regulations. Joyce on Elec. Law *supra.* The public duty does not arise from any question of ownership but from the nature and character of the business and the fact that it is conducted under a franchise granted by public authority.

· It is not claimed that there is any authority under this act to consent to the erection of poles and wires for a telephone for private use along a public highway either by a corporation or an individual.

No question of the right of eminent domain is involved in this case. The question arising is whether or not an individual can under the act mentioned hold a franchise to construct a telephone for public use along a public highway? Did the Legislature intend to restrict the conducting of the business of operating a telephone for public use to a corporation and exclude individuals from this class of legitimate business? Unless there be some constitutional or legislative restriction then the business being legitimate would be open to all persons alike whether natural or artificial. In the case of *Watson* v. *Railroad Co. supra,* it was held where the Legislature gave to a municipal corporation power to grant and regulate franchises generally, that a franchise to operate a street railway might be· granted to an individual.

It is contended that it clearly appears that such a franchise can only be granted to a corporation when chapter 96, Acts 1891, is read in connection with section 48, chapter 54, of the Code, in which this language occurs, "The county court of any county may authorize any telegraph or telephone company, organized under this chapter, to erect and main-

tain telegraph or telephone poles on any land condemned or used as a public road, but not in such way as to obstruct any such road.    But this section shall not apply to the National or Cumberland road." It will be observed that this provision is found in a chapter of the Code relating to joint stock companies and that it refers, and expressly limits its application to any telegraph or telephone companies organized under that chapter.    Chapter 96 of the Acts of the Legislature of 1891 is an independent act, passed without reference to section 48 of chapter 54, and does not purport to amend, re-enact or repeal it.    Instead of sustaining the view that chapter 96, Acts of 1891, limits the granting of franchises thereunder to the incorporated companies mentioned in section 48, chapter 54, it would seem to sustain the opposite view that the new act was intended in its scope to include something more than the former provision.

It is also insisted that the word "companies" in chapter 96 of the Acts of 1891 necessarily limits the granting of such a franchise to a corporation, and that the true construction of that word as so used prevents an individual or individuals from taking a franchise under that act.

Company in its primary sense means an association of a number of individuals for the purpose of carrying on a legitimate business; a number of persons united for the same purpose, or in a joint concern, as a company of merchants. The word is applicable to private partnerships or incorporated bodies of men.    Cyc. of Law and Proceed. Volume 8, p. 399.    The word "company" as used in the statutes has been judicially construed many times in this country.  Individuals may be included within the meaning of the term. *Moran* v. *Ross*, 79 Cal. 159; *Singer Mfg. Co.* v. *Wright*, 97 Ga. 114; *Chicago Dock, etc., Co.* v. *Garrity*, 115 Ill. 155; *St. Louis, etc., R. Co.* v. *Trustees Ill. Inst., etc.*, 43 Ill. 303; *State* v. *Stone*, 118 Mo. 388; *State Board of Assessors* v. *Central R. Co.*, 48 N. J. L. 146; *Keyport, etc., Steamboat Co.* v. *Farmers Transpt. Co.*, 18 N. J. Eq. 13; *Singer Mfg. Co.* v. *Wright*, 33 Fed. Rep. 121.    In these decisions the word "company" is held to include individuals.    If this were a statute placing a tax upon telepone companies could it reasonably be said that it would not also include individuals operating such public utility?    The word "companies" as

used in the statute under construction includes individuals as well as corporations. If it includes individuals there is no reason for saying that it does not include a single individual. It is hardly to be supposed that the Legislature meant to authorize the granting of a franchise to operate a public telephone to two or more individuals, and did not intend to give the same right to a single individual. The county court of Wetzel county had authority under chapter 96 of the Acts of 1891, to consent to this franchise for the placing of telephone poles and wires for a telephone for public use along a county road, to F. P. Lowther, an individual.

The next question arising is the question of additional servitude. Does the reasonable use of a public highway for the placing of telephone poles and wires for public use create an additional servitude upon the fee of the abutting land owner in such highway? There is much conflict of authority upon this question. The decisions of the various states are not in harmony and cannot be reconciled with any uniform doctrine upon this subject. There are many authorities which hold that the placing of telegraph and telephone lines along the public highway is not an additional servitude upon the fee of the abutting land owner. *McGee* v. *Overshiner*, 150 Ind. 127; *Irwin* v. *Great Southern Telegraph Co.*, 37 La. Ann. 63; *Pierce* v. *Drew*, 136 Mass. 75; *Carter* v. *N. W. Teleph. Ex. Co.* (Minn. S. C. 1895), 5 Am. Elec. Cas. 111; *Julia Building Assn.* v. *Bell Tel. Co.*, 88 Mo. 258; *Herschfield* v. *Rocky Mountain Bell Tel. Co.*, 12 Mont. 102. Many of these cases hold that the uses of a public highway, prevailing at the time of the taking or dedication of the land for such highway, are not the limits of the uses to which the public is entitled and which the soil owner is deemed to have contemplated, but such uses are to be enlarged to include all of the additional and improved methods of obtaining the same objects and enjoying the same privileges, not, however, to the denial or substantial impairment of the fee owner's use and enjoyment of his abutting property. Many more cases holding that there is no additional servitude upon the fee might be added and an equal or greater number which hold to the opposite doctrine. The cases which hold that there is no new or additional servitude,

further hold that the use of the public highway for telegraph or telephone lines must be reasonable. Our case of *Maxwell* v. *Telegraph Co.*, 51 W. Va. 121, is in line with the cases holding that there is no additional servitude by the placing of telephone poles and wires for a telephone for public use along the public highway. Judge Dent in delivering the opinion of the Court, says: "Telephone poles are not things of beauty, yet their utility is so great that their ugliness must be endured until human invention has discovered some more tasteful substitute for them. The public can well afford to surrender a reasonable portion of the public easement in its highways to a public utility of such vastly increasing importance. As the owner of the fee in such highway loses nothing thereby he has no grounds to complain. It puts no additional burden on the fee, but it is a burden alone upon the permanent easement to which it is appurtenant and subservient." This case is binding authority on this Court and necessarily brings us to the conclusion that there is no additional servitude by the reasonable use of a public highway for the purpose of placing telephone poles and wires for public use along it. We are aware that some authorities make a distinction here between a street of a town or city and a county road in the country, but we see no sound reason for the distinction.

It is claimed that this franchise should have been accepted by F. P. Lowther. There is nothing in the order of the county court consenting to it which requires it to be accepted. The order was made upon the application of F. P. Lowther and no further acceptance of the franchise was necessary.

It is not necessary to discuss the question as to whether upon the death of F. P. Lowther this franchise passed to his personal representative or to his heirs at law, as the administrator and heirs at law are plaintiffs in this bill.

It appears from the evidence that after the preliminary injunction was granted, the plaintiffs proceeded to complete their telephone line in controversy, and that in so doing they may have placed one or more poles and braces on defendant's land, and that some of the wires on the cross arms may overhang defendant's land in some places.

The evidence is not clear or satisfactory as to these matters. It is shown that the road was originally thirty feet

wide, and that the defendant owns the land on each side of it, and in building his fences located the fences so as to place them on the best ground for such purpose, and that in some places the space between the fences is as much as thirty-three feet and six inches and in others only twenty-two feet. Where there is an excess above the original width it does not appear whether the excess is on the side on which the telephone poles are located or on the other side. The injunction only restrains the defendant from interfering with the construction and maintenance of the line or lines along the public highway, and the plaintiffs have no right to place the poles and braces on defendant's land or overhang it with wires. Such action would be an actual taking of defendant's land and he should not be restrained from interfering with it. The expression "along the public highway," in this connection, means in, on or over the public highway and not in, on or over defendant's land. If any of the poles or braces of this line are on defendant's land, or any of the wires overhang it, these are matters which did not exist at the time the preliminary injunction was granted, but arose afterward and are not precluded by a perpetuation of the preliminary injunction. We are clearly of the opinion that the injunction perpetuated by the lower court does not preclude the defendant from interfering with, or from any right or remedy as to, any pole or brace of this line placed in or upon his land, or as to any wire overhanging his land.

For the reasons stated the decree of the circuit court, entered on the 13th of June, 1904, in this cause is affirmed.

*Affirmed.*