# CHARLESTON

## HARDMAN *v.* CABOT.

Submitted June 13, 1906.    Decided November 27, 1906.

1.    HIGHWAYS—*Public Use—Pipe Lines—Additional Burden.*
    A pipe-line, laid in a public rural highway, under proper au-
thority, and used for supplying the public with natural gas for
heating and illuminating purposes, though imposing an additional
public service upon the road, is not a use in excess of the right of
the public in such road, and does not impose an additional bur-
den upon the estate in fee in the land.    (p. 665.)

2.    SAME.
    In respect to the rights of the public in highways, held under
valid dedications and acceptances, and the power of the legisla-
ture over the same, there is no distinction in this state be-
tween the streets of incorporated cities and towns and country
roads.    (p. 665.)

3.    SAME—*Consent of Authorities.*
    Certain rights of use in public highways, owing to their peculiar
nature, are dependent upon the will of the authorities having con-
trol of the streets and roads, and can be exercised only with their
consent and under such restrictions as they, in the exercise of their
discretion, may see fit to impose.    Among these the right to con-
vey natural gas, for public use, along a highway by means of pipes,
laid under the surface, is included.    (p. 666.)

4.    SAME—*Use by Natural Persons.*
    Permission to so use a public road may be granted, by a county
court, to a natural person.    (p. 666.)

5.    GAS—*Rights of Gas Company in Highway—Pipe Lines—Enjoining
Use—Evidence.*
    In a suit to enjoin the use of a public road, under permission
therefor, granted by a county court, for the purpose of conveying
natural gas along the same by means of pipes laid under the sur-
face thereof, for public consumption, as a means of producing heat
and light, on the ground that the pipes are not maintained,
and the gas conveyed by means of them, for such purpose, the
plaintiff must allege and prove the fact; wherefore the defendant
may introduce evidence to prove that the pipes are so maintained
and the gas so conveyed, in resistance of the effect of the plain-
tiff's evidence, under his denial of the allegation of the bill.
(p. 667.)

6.    EQUITY—*Evidence—Burden of Proof.*
    In assailing a *prima facie* right or title, by a bill in equity, the

plaintiff must aver and prove facts sufficient to overcome it. Ordinarily, he cannot otherwise put the defendant to the proof of a perfect, indefeasible title or right. (p. 670.)

(McWHORTER, JUDGE, Absent.)

Appeal from Circuit Court, Calhoun County.

Bill by Marcellus Hardman against Godfrey L. Cabot. Decree for defendant, and plaintiff appeals.

*Affirmed.*

MATHEWS & BELL, and WALTER PENDLETON, for appellant.

VAN WINKLE & AMBLER, for appellee.

POFFENBARGER, JUDGE:

Marcellus Hardman feels aggrieved by the action of the judge of the circuit court of Calhoun county, in dissolving, in vacation, an injunction, which he had obtained, inhibiting and restraining Godfrey L. Cabot from locating, maintaining and operating a gas pipe-line in a public road, running through the lands of said Hardman, under permission for occupation thereof, granted by the county court of said county, which pipe-line was required, by said order of permission, to be placed under the surface of the road at least two feet.

Certain conclusions to which we have come, and which seem to be accordant with those of the trial court, render it unnecessary to discuss a number of questions, concerning which elaborate arguments are found in the briefs. This will be apparent to counsel from the following statement of principles and conclusions.

Assuming for the present that the use to which the road is subjected, in the exercise of the privilege so granted, is within the purpose for which the road was dedicated to the public, and accepted by its authorities, and does not constitute an additional servitude upon the land, the title to which is in the plaintiff, subject to a right of use in the public for highway purposes, the important question arises, whether such permission can be granted by a county court to a private individual, for the purpose of enabling him, by means thereof, to subserve the public interest, by supplying the inhabitants of the community with natural gas for the purposes of heat and illumination.

Express authority, for granting such permits to incorporated companies, organized for the purpose of transporting petroleum oil and natural gas, is conferred upon county courts by section 24 of chapter 52 of the Code. It is earnestly insisted by counsel for the appellee that the authority conferred by that section is broad enough to enable such tribunal to grant like permits or privileges to private individuals, and *Lowther* v.*Bridgeman*, 57 W. Va. 306, is cited as authority for the proposition; but it was carefully noted in that case that the act of the legislature authorizing the occupation of public roads by telephone companies, with the consent of county courts, was not amendatory of any chapter of the Code relating to corporations, wherefore this Court was enabled to place a liberal construction upon the word "companies," used in the act. It may well be doubted whether chapter 113 of the acts of 1891, adding a new section to chapter 52 of the Code, relating to corporations generally, falls within the line of that process of reasoning. But this is not conclusive. While we may not be able to say the word "companies," as used in section 24 of chapter 52, includes co-partnerships or individuals, the spirit of that and other statutes may sustain the action of the county court.

It is far less important for us to know, and for the legislature to declare, what persons may make a certain use of a highway, than what may be lawfully done in it. All persons, both natural, and artificial, are entitled to use public highways; and have equal rights in respect to them; but there is a limitation upon all as to the manner in which they may use them. Some of the uses, that courts have deemed to be within the grant of the land for highway purposes, are such in character as cannot be exercised, with safety to the public, or without working prejudice to persons using the way in the ordinary modes, in the absence of regulation. To the end that proper rules and regulations may be established in every such case, persons desiring to exercise such powers must obtain permission to do so, and the permission is granted upon terms and conditions, intended to prevent the use permitted from rendering the highway unsafe to other persons or producing an unreasonable restraint upon their privileges. To this class belong railways,

telegraph and telephone lines, sewers and water and gas pipes. The legislature, in expressly authorizing the use of highways, under permission of the county courts, by corporations, engaged in the service of the public, for the location and operation of their gas pipes, has declared that such use is proper. Who may have it is a matter of no consequence, in so far as it affects the road, but of immense importance as regards the public. We are not to impute to the legislature an intention to allow corporations greater rights in public highways than natural persons. That private persons may engage in public service, such as is usually carried on by corporations, has been declared by this Court. *Lowther* v. *Bridgeman*, 57 W. Va. 306; *Lowe & Butler* v. *Gas Co.*, 52 W. Va. 662; *Watson* v. *Railway Co.*, 49 W. Va. 528. The legislature has expressly so declared also in section 1 of chapter 44 of the Acts of 1891, as to the transportation of petroleum oil.

That railroads, whether operated by steam or other motive power, and telegraph and telephone lines, do not impose additional servitudes, when located in highways, be they city streets or country roads, is abundantly settled by the decisions of this Court. *Watson* v. *Railway Co.*, 49 W. Va. 528; *Lowther* v. *Bridgeman*, 57 W. Va. 306: *Arbends* v. *Railroad Co.*, 33 W. Va. 1; *Spencer* v. *Railroad Co.*, 23 W. Va. 406; *McEldowney* v. *Lowther*, 49 W. Va. 348. To hold the contrary, as regards pipe lines for conveying gas, water and other supplies, would be most disastrous to cities, towns and counties of this State, in which hundreds, possibly thousands, of miles of such pipes have been laid in the highways, without any thought on the part of the fee owner of any right in him to prevent it, until payment of compensation should be made. In the states of Indiana, Pennsylvania and some others, such use of a highway is regarded and treated as subjecting the land to an additional servitude, but there is a great deal of high authority to the contrary, besides a lack of forcefulness in the reasoning upon which the decisions, declaring the doctrine, are based. In *Bishop* v. *North Adams Fire District*, 167 Mass. 364, the court held that the public authorities might lay water pipes in a public highway without the payment of any compensation to an abutting land owner, although the highway, of which

he owned the fee, was thereby subjected to an additional public use. This decision was based upon the doctrine announced in *Attorney General* v. *Metropolitan Railroad*, 125 Mass. 515, and *Pierce* v. *Drew*, 136 Mass. 75. In the latter of these two cases, which involved the right to compensation for a supposed additional servitude, resulting from the location of a telegraph line in a public highway, the court said, at page 81: "When the land was taken for a highway, that which was taken was not merely the privilege of traveling over it in the then known vehicles, or of using it in the then known method, for either the conveyance of property or transmission of intelligence. Although the horse railroad was deemed a new invention, it was held that a portion of the road might be set aside for it, and the rights of other travelers, to some extent, limited by those conditions necessary for its use. * * * The discovery of the telegraph developed a new and valuable mode of communicating intelligence." In another part of the opinion it said: "It has never been doubted that, by authority of the legislature, highways might be used for gas and water pipes, intended for the convenience of the citizens, although the gas or water was conducted thereunder by companies formed for the purpose; or for sewers, whose object was not merely the incidental one of cleansing the streets, but also the drainage of private estates, the rights of which to enter therein were subject to public regulation. * * * Nor can we perceive that these are to be treated as incidental uses, as suggested by the plaintiff, because the pipes are conducted under the surface of the traveled way, rather than above it. The right of the owner of the fee must be the same in either case, and the use of the land under the way for gas pipes or sewers would effectually prevent his own use of it for cellarage or sewer purposes." The theory of incidental use, thus repudiated, was that pipes could be used only for the purposes of the highway, such as supplying it with light and water and draining it. The court held the additional public use was not an additional burden upon the land. See *Watson* . v. *Railway Co.*, 49 W. Va. 528, for approval of some of the principles declared in said case. The Indiana, Pennsylvania and other decisions, denying the power of the legislature to authorize such use of rural highways, make a distinction between such

highways and streets of cities and towns.  This Court recognizes no such distinction.  *Lowther* v. *Bridgeman*, cited. Some of them assign, as a reason for the additional servitude doctrine, that such an occupation of the land would ripen into title by lapse of time.  As it is under permission, not title or claim of title, it is difficult to see how it could be adverse.  In the case of streets, the exercise of such right is universally recognized and held not to impose any additional burden.  Elliott, Roads & Streets, section 405.

That the surface, the use of which is granted for highway purposes, includes more than the visible part of the land has been often declared by the courts, and is affirmed by constant experience.  Excavations, fills and the laying of deep foundations for bridges are necessary.  Danforth, J., said, in *Story* v. *Railroad Co.*, 90 N. Y. 122, 161, "The public purposes of a street requires of the soil the surface only.  Very ancient usage permits the introduction under it of sewers and water pipes, and upon it of posts for lamps." In *Cloverdale* v. *Chariton*, L. R. 4 Q. B. Div. 104, Lord Justice Bramwell said: "Street comprehends what we may call the surface, that is to say not a surface bit of no reasonable thickness, but a surface of such thickness as the local board may require for the purpose of doing to the street that which is necessary for it as a street and also of doing those things which are commonly done in or under the streets."

What has just been said, it must be observed, assumes that the grantee of this permission will use the pipe line in the service of the public.  Upon the evidence adduced, the circuit court has necessarily found that such is the intention, and the evidence seems to amply justify the finding. The defendant testifies that he has thirty miles or more of gas mains, of which this pipe will form a part, used in distributing natural gas, and that he is supplying a number of private customers. It seems not to be contested that he is supplying the people of the town of Brooksville and vicinity, and he says, if he is unable to lay the large line, in controversy, he will be obliged to obtain gas from some place other than his Leaf Bank field, in order to give his customers down the river an adequate supply, and further that some of his customers in that sec-

tion are complaining of the lack of an adequate supply. Lack of capacity to give his customers an adequate supply of gas by means of the six and one-quarter inch pipe, which is already laid over the plaintiff's land at some distance from the public road, seems clearly to be the cause of his effort to put in the ten inch pipe on the road. His testimony is not as full and definite as it might be, but we think it sufficiently discloses the public nature of the business in which he is engaged and the necessity of the use of the road to enable him to successfully prosecute it.

His right of occupation of the road for the purpose and in the manner aforesaid is denied in the argument, on the ground that no notice of his application to the county court, for the privilege or franchise, was given in the manner prescribed by the statute, but the bill does not charge failure to give such notice. As will be shown herein, the plaintiff is bound to show that the defendant's occupation of the road is wrongful, in order to sustain the injunction, and, under well settled principles and rules of equity practice, he must allege whatever it is necessary to prove. But aside from this, such notice would only have given him an opportunity to be heard before the granting of the privilege, and he has had the equivalent of that in the hearing given him upon his motion, after the permit had been given, to revoke the same, upon which hearing the court modified its order and curtailed the privileges to such an extent as it thought anybody was entitled to have it restricted, by requiring the defendant to put his pipe two feet under the ground, instead of eighteen inches, as prescribed in the first order. The statute, requiring notice of such applications, does not confer any judicial powers upon the tribunals to which they apply, nor vest in any citizen the right to prevent or control action, otherwise than to the extent of being heard in opposition, by remonstrance or otherwise. *City of Benwood* v. *Railway Co.*, 53 W. Va. 465. However, we do not decide that he is precluded, by the hearing on his motion to revoke, from having such relief, if any, as he is entitled to by reason of the granting of the permit, without notice having been given, if it was so granted. This matter is not in the case.

Since, in using the road as aforesaid, by permission of the

county court, the defendant has not taken, and is not attempting to take, any of the land of the plaintiff, it is quite clear that some of the principles enunciated in *Lowe & Butler* v. *Gas Co.* and other condemnation suits are not applicable, and much of the argument in the briefs of counsel for the appellant need not, therefore, be responded to. Whether his property has been, or will be, injured by a rightful occupation of the road is an entirely different matter. For that he is not entitled to an injunction, as has been emphatically asserted by a number of decisions of this Court, unless the injury is so great as to amount to a virtual taking of the property. *Watson* v. *Railroad Co.*, 49 W. Va. 528; *McEldowney* v. *Lowther*, 49 W. Va. 348; *Taylor* v. *Railroad Co.*, 33 W. Va. 39; *Arbenz* v. *Railroad Co.*, 33 W. Va. 1; *Spencer* v. *Railroad Co.*, 24 W. Va. 406; *Mason* v. *Bridge Co.*, 17 W. Va. 396.     By these decisions he is limited to his action at law for compensation in damages.

In his answer Cabot did not aver that his use of the road was permitted for a public purpose. On the motion to dissolve, he tendered and was permitted to file, over the objection of the plaintiff, an amended answer, setting up this fact. Before doing so, he had taken depositions to prove it. On objection to the reading of the depositions for that reason, the court gave leave to re-take them.     Thereupon the parties filed a stipulation by which the plaintiff waived the right to require the depositions to be re-taken and consented to the reading thereof. It is here assigned as error, that the court considered this evidence and founded its decree thereon, because the objection to the filing of the amended answer has not been waived, and is insisted upon, and, without said amended answer, there is no allegation of the fact which the testimony proves. Well settled principles deny the right to file the amended answer, upon the facts disclosed by the affidavits, tendered with it. But the evidence is admissible without any affirmative allegation of the fact. The defendant's occupation and use of the road, is not the occupation and use of the plaintiff's land, for it is covered by the grant out of said land to the public of the right of use, and the permission given to the defendant, confers upon him no right in excess of that which the public has in respect to the land. Hence, in order to sustain his in-

junction it is incumbent upon the plaintiff to show that, in granting to the defendant the privilege which he had, the county court, in some way, exceeded its authority. This might have been done by alleging and proving that the purpose for which the privilege was granted, and the use to which the road was thereby subjected, were not public in their nature, or possibly, but we do not so decide, by failure to give the notice of the application. In this ruling we apply nothing more than elementary rules of pleading and practice. The defendant has the *prima facie* right. Any one who seeks to deprive him of that must overcome it with proof, and must lay a basis for his proof in his pleadings. The occupant of land is not compelled to make a disclosure of his title merely because somebody challenges his right to it. He who seeks to set aside a deed, on the ground of fraud or a defect of any kind, be it apparent upon the face of, or found in some matter *dehors* the instrument, and to be established by proof *aliunde*, must allege that defect, as well as prove it, in order to invalidate, or obtain relief against, the deed. That the defendant has the *prima facie* right is apparent and not disputed. The road is a public one, having been under the control of public authorities and used by the public for half a century or more, and the county court granted a privilege in it which it had a right to grant, for aught that has been shown by the plaintiff. "Every averment necessary to entitle a plaintiff to be entertained in a court of equity must be contained in the bill." *Vanbibber* v. *Beirne*, 6 W. Va. 168; *Eib* v. *Martin*, 5 Leigh 141; *Parker* v. *Carter*, 4 Munf. 273. And the plaintiff must assert his claim with reasonable certainty. *Zell Guano Co.* v. *Heatherly*, 38 W. Va. 409

Seeing no error in the order complained of, we affirm it and remand the cause.

*Affirmed.*