G. D. HEROLD, *et al.*

*v.*

C. J. HUGHES AND HAMILTON GAS CORPORATION

(No. 10731)

Submitted September 14, 1955. Decided October 25, 1955.

LOVINS, JUDGE, dissenting.

*Steptoe & Johnson, W. F. Wunschel, Stanley C. Morris, Breckinridge & Brown, John B. Breckinridge,* for appellants.

*Rummel, Blagg & Stone,* amicus curiae on behalf of West Virginia Oil & Natural Gas Association.

*Wolverton & Callaghan, G. D. Herold, R. J. Thrift, Jr.,* for appellees.

GIVEN, JUDGE:

The plaintiffs, G. D. Herold, Talitha S. Herold, Eugenia P. Herold and Laura V. Wolverton, instituted a chancery cause in the Circuit Court of Nicholas County against C. J. Hughes and the Hamilton Gas Corporation praying that a mandatory injunction be issued requiring the defendants to remove certain "gas transmission pipeline from the said property of these plaintiffs"; that the defendants be restrained from any further trespasses on the real estate of plaintiffs, and for damages. The defendants answered, denying any trespass on real estate of plaintiffs and alleging the right to construct and maintain the gas pipe line complained of by virtue of a permit issued to Hamilton Gas Corporation by the State Road Commission of West Virginia. The trial court, after the taking of depositions, entered a decree granting the injunction.

The Hamilton Gas Corporation is a producer of natural gas which it transports and sells to Hope Natural Gas Company. The Hope Natural Gas Company is a public utility, but the Hamilton Gas Corporation is not a public for Hamilton to construct a four inch pipe line from the utility. For the delivery of such gas it became necessary

producing wells to the point of delivery to Hope Natural Gas Company. In doing so it employed the defendant, C. J. Hughes, to construct the pipe line. The line constructed, over timely protests of plaintiffs, passed through or over the public roadway acquired by the State Road Commission, which extended through the farm now owned by plaintiffs for a distance of approximately 4,397 feet. The roadway is now designated as United States Route 19 and was formerly known as State Route 4. No deed or conveyance to the State Road Commission or to the County Court of Nicholas County is exhibited, or shown to have been executed, by plaintiffs or any predecessors in title, conveying the roadway. Apparently the only matter of record which might have any relation to the transfer is an item found in the records of the County Court of Nicholas County, made on the 12th day of December, 1927, which reads: "THE FOLLOWING CLAIMS ARE ALLOWED PAYABLE OF COUNTY ROAD FUND L. W. Herold Estate Right of Way Route No. 4 2350.00 No. 3675. * * *". There is no question that the right of way mentioned is the right of way presently involved. Neither is there any question that the right of way has been used for public road purposes since its acquisition by the County Court of Nicholas County.

The permit, issued by the State Road Commission to Hamilton, October 19, 1953, pursuant to Code, 17-16-6, authorized the construction and maintenance of a "4" Gas line along U. S. Rt. 19 parallel to and at least 5' from present pavement and buried at a minimum depth of 18" below ditchline". The permit, however, was on condition that the work be done under the direction of the State Road Commission; that the State Road Commission be saved harmless from damages; that the applicant be responsible for all repairs necessitated by the construction of the pipe line; that applicant would remove the installations at no cost to the State Road Commission when required for the improvement of the road; and that the applicant shall be "subject to all regulations now or hereinafter adopted by the State Road Commission".

One of the pertinent statutes, Code, 17-16-6, as amended, reads in part: "No opening shall be made in any state or county-district road or highway, nor shall any structure be placed therein or thereover, nor shall any structure, which has been so placed, be changed or removed, except in accordance with a permit from the state road commission or county court, as the case may be. No road or highway shall be dug up for laying or placing pipes, sewers, poles or wires, or for other purposes, and no trees shall be planted or removed or obstructions placed thereon, without the written permit of the commission or county court, or its duly authorized agent, and then only in accordance with the regulations of the commission or court. The work shall be done under the supervision and to the satisfaction of the commission or court; and the entire expense of replacing the highway in as good condition as before shall be paid by the persons to whom the permit was given, or by whom the work was done: Provided, however, that nothing herein contained shall be so construed as to prevent any oil or gas company or person having a proper permit or franchise from transporting oil or gasoline along any of the public highways of this State, nor to give such company a franchise without paying to the landowners through whose lands such road passes the usual and customary compensation paid or to be paid to the landowners for such right of way. Any grant or franchise when made shall be construed to give to such company or person only the right to use the easement in such public road."

The other pertinent statute, Code, 17-4-8, as amended, in so far as material, reads: "No railroad or electric or other railway shall be constructed upon the roadbed of any state road, except to cross the same, nor shall any person, firm or corporation enter upon or construct any works in or upon such road, or lay or maintain thereon or thereunder any drainage, sewer or water pipes, gas pipes, electric conduits or other pipes, nor shall any telephone, telegraph or electric line or power pole, or any other structure whatsoever, be erected upon, in or over

any portion of a state road, except under such restrictions, conditions and regulations as may be prescribed by the state road commissioner."

It is the position of the plaintiffs that the State Road Commission acquired and owns only an easement across their farm and that the fee in the strip of land in which the easement exists is vested in plaintiffs, the owners of the farm out of which the easement was carved. The trial court so found, and further found that the construction and maintenance of the gas line constituted an additional burden on the fee; and held that plaintiffs were entitled to injunctive relief, and ordered the removal of the pipe line from the right of way. Since the item quoted above from the record of the County Court of Nicholas County shows that the right or property acquired was a "right of way" for a road, and since G. D. Herold, one of plaintiffs, testified to the effect that neither the County Court of Nicholas County nor the State Road Commission has any deed for the property, and that the fee in the land over which the right of way exists has been assessed for tax purposes as part of plaintiffs' farm, we treat the finding of the court as supported by the evidence. See 25 Am. Jur., Highways, Section 132; 17 M. J., Streets and Highways, Section 27.

The defendants say that the permit issued to defendant Hamilton Gas Corporation by the State Road Commission vests in it the right to construct and maintain the gas line on the conditions set out therein, whether the State owns the fee in the land or whether it owns merely an easement for public road purposes. Thus the controlling question relates to the right or authority of the State Road Commission, under the statutes quoted above, to issue such a permit where it owns merely an easement for public road purposes.

It may be conceded, at least for the purposes of this case, that the State can not grant, by permit or otherwise, any right or property as to such an easement which would place upon the fee in the land a burden greater or

in addition to that which is necessarily included within a grant of an easement for public road purposes. To permit such would be to permit the depriving of the owner of a part of his property without just compensation, in violation of constitutional provisions. But such a conclusion does not furnish an answer to the question posed, for we must determine whether the right or privilege granted Hamilton Gas Corporation is a right or privilege included within the grant of an easement for public road purposes.

The public highways of this State belong to the State and are subject to the control of the State. *Nulter* v. *State Road Commission*, 119 W. Va. 312, 193 S. E. 549. Though the owner of a fee in an easement existing for public road purposes may technically have title to the surface of the way not useful or necessary in the construction or maintenance of the road, he can not utilize it in any manner that will interfere with the use by the public or with the control of the way by the State. 39 C. J.S., Highways, Section 138; 25 Am. Jur., Highways, Section 135. "* * * The question, then, is, what is the nature and extent of the public easement in a highway? If there is any one fact established in the history of society and of the law itself, it is that the mode of exercising this easement is expansive, developing and growing as civilization advances. In the most primitive state of society the conception of a highway was merely a footpath; in a slightly more advanced state it included the idea of a way for pack animals; and, next, a way for vehicles drawn by animals, — constituting, respectively, the iter, the actus, and the via of the Romans. And thus the methods of using public highways expanded with the growth of civilization, until today our urban highways are devoted to a variety of uses not known in former times, and never dreamed of by the owners of the soil when the public easement was acquired. Hence it has become settled law that the easement is not limited to the particular methods of use in vogue when the easement was acquired, but includes all new and improved methods, the utility

and general convenience of which may afterwards be discovered and developed in aid of the general purpose for which highways are designed. And it is not material that these new and improved methods of use were not contemplated by the owner of the land when the easement was acquired, and are more onerous to him than those then in use * * * ". *Cater* v. *Northwestern Tel. Exch. Co.*, 60 Minn. 539, 63 N. W. 111, 28 L.R.A. 310, 51 Am. St. Rep. 543.

In *Thacker* v. *Ashland Oil & Refining Co.*, 129 W. Va. 520, 41 S. E. 2d 111, the State Road Commission granted the defendant permission to construct and maintain two six inch pipe lines for the transportation of petroleum oil products over a public roadway which had been granted by plaintiff and his wife, the grant being in fee. The plaintiff protested the granting of the permit, contending that the State Road Commission had no power to grant such a permit to a non-public utility for private use. This Court, in upholding the power of the State Road Commission to issue the permit, after carefully considering the pertinent statutes, held that the State Road Commission " * * * has exclusive authority and power in writing to grant to a private corporation or individual, though not engaged as a public utility, a permit for the laying, construction and maintenance of pipe lines for the transportation of oil and other petroleum products under and along the roadbeds of the primary and secondary roads of the State and to supervise the same, provided that said pipe lines, when constructed and operated, do not interfere with public travel and do not constitute a hazard or a public nuisance." (Part Point 3, Syllabus).

In *Hardman* v. *Cabot*, 60 W. Va. 664, 55 S. E. 756, there was involved the right of defendant to lay and maintain a gas pipe line in a rural highway, pursuant to permission granted by the county court of the county wherein the highway was located. In upholding the validity of the permit granted, the Court said: "1. A pipe-line, laid in a public rural highway, under proper authority, and used for supplying the public with natural

gas for heating and illuminating purposes, though imposing an additional public service upon the road, is not a use in excess of the right of the public in such road, and does not impose an additional burden upon the estate in fee in the land. 2. In respect to the rights of the public in highways, held under valid dedications and acceptances, and the power of the legislature over the same, there is no distinction in this state between the streets of incorporated cities and towns and country roads. 3. Certain rights of use in public highways, owing to their peculiar nature, are dependent upon the will of the authorities having control of the streets and roads, and can be exercised only with their consent and under such restrictions as they, in the exercise of their discretion, may see fit to impose. Among these the right to convey natural gas, for public use, along a highway by means of pipes, laid under the surface, is included."

In the opinion in the *Hardman* case the Court said: "That railroads, whether operated by steam or other motive power, and telegraph and telephone lines, do not impose additional servitudes, when located in highways, be they city streets or country roads, is abundantly settled by the decisions of this Court. *Watson* v. *Railway Co.*, 49 W. Va. 528; *Lowther* v. *Bridgeman*, 57 W. Va. 306; *Arbends* v. *Railroad Co.*, 33 W. Va. 1; *Spencer* v. *Railroad Co.*, 23 W. Va. 406; *McEldowney* v. *Lowther*, 49 W. Va. 348. To hold the contrary, as regards pipe lines for conveying gas, water and other supplies, would be most disastrous to cities, towns and counties of this State, in which hundreds, possibly thousands, of miles of such pipes have been laid in the highways, without any thought on the part of the fee owner of any right in him to prevent it, until payment of compensation should be made. In the states of Indiana, Pennsylvania and some others, such use of a highway is regarded and treated as subjecting the land to an additional servitude, but there is a great deal of high authority to the contrary, besides a lack of forcefulness in the reasoning

upon which the decisions, declaring the doctrine, are based. In *Bishop* v. *North Adams Fire District*, 167 Mass. 364, the court held that the public authorities might lay water pipes in a public highway without the payment of any compensation to an abutting land owner, although the highway, of which he owned the fee, was thereby subjected to an additional public use. This decision was based upon the doctrine announced in *Attorney General* v. *Metropolitan Railroad*, 125 Mass. 515, and *Pierce* v. *Drew*, 136 Mass. 75. In the latter of these two cases, which involved the right to compensation for a supposed additional servitude, resulting from the location of a telegraph line in a public highway, the court said, at page 81: 'When the land was taken for a highway, that which was taken was not merely the privilege of traveling over it in the then known vehicles, or of using it in the then known method, for either the conveyance of property or transmission of intelligence. Although the horse railroad was deemed a new invention, it was held that a portion of the road might be set aside for it, and the rights of other travelers, to some extent, limited by those conditions necessary for its use. * * * The discovery of the telegraph developed a new and valuable mode of communicating intelligence.' In another part of the opinion it said: 'It has never been doubted that, by authority of the legislature, highways might be used for gas and water pipes, intended for the convenience of the citizens, although the gas or water was conducted thereunder by companies formed for the purpose; or for sewers, whose object was not merely the incidental one of cleansing the streets, but also the drainage of private estates, the rights of which to enter therein were subject to public regulation * * *' ".

One of the holdings in the *Hardman* case emphasizes the fact that, as to the question here involved, there is no difference whether the question arises in regard to a rural highway right of way or to a city street. In *Fox* v. *City of Hinton*, 84 W. Va. 239, 99 S. E. 478,

this Court said: "It may be said that in this State, upon the acquisition of a public street, the fee of the land remains in the landowner, and the public acquires an easement in the street for travel. What does this easement include? It embraces every kind of travel and communication for the movement or transportation of persons or property which is reasonable, and further it includes the use of all kinds of vehicles which can be introduced with reasonable regard for the safety and convenience of the public, as well as every reasonable means of transportation, transmission and movement beneath the surface of the ground, as well as upon or above it. And when the easement is acquired by the city it carries .with it the right to use the street for street cars, for wires of telephone, telegraph and electric lighting companies, and for water pipes, gas pipes, sewers, and such other similar arrangements for communication or transportation as future invention may make desirable. *Arbenz* v. *Railroad Co.*, 33 W. Va. 1; *Watson* v. *Railway Co.*, 49 W. Va. 528; *Maxwell* v. *Telegraph Co.*, 51 W. Va. 121; *Lowther* v. *Bridgeman*, 57 W. Va. 306; *Lynch* v. *Town of North View*, 73 W. Va. 609; *People* v. *Eaton* (Mich.) 24 L. R. A. 721, and note; *Frazier* v. *Telephone Co.* (Tenn.), 3 L. R. A. (N. S.) 323, and note; *Hobbs* v. *Telegraph Co.* (Ala.) 7 L. R. A. (N. S.) 87, and note; *Pierce* v. *Drew*, 136 Mass. 75; *Eustis* v. *Railway Co.*, 183 Mass. 586; *Telephone Co.* v. *Terminal Company*, 182 Mass. 397 * * *". See *Karcher* v. *Wheeling Electrical Co.*, 94 W. Va. 278, 118 S. E. 154.

As early as *Spencer* v. *Point Pleasant & Ohio R. R. Co.*, 23 W. Va. 406, this Court said: "Others have held, what seems to us to be a more reasonable view, viz: That it was immaterial whether the owners of adjoining lots owned the fee or not. Their reason for this opinion was, that though the fee of the street be in the owners of adjoining lots, yet as the town or city has a right to the use of the ground as a highway, and for various other purposes consistent therewith, such as the making of sewers and the laying of gas or water

pipes and other purposes, for which a street may be legitimately used, which right to use the street is practically an exclusion of the owner of the fee in the street, so long as it is used by the town without obstructing the surface of the ground, and as this right of user on the part of the city or town is permanent, and may and in all probability will last forever, the reversionary right of the owner of the fee in the surface of the street is too remote and contingent to be of any appreciable value or to be regarded as property, which under the Constitution is required to be paid for when its use is appropriated by the public. As countenancing this view, see *Tuckahoe Canal Co.* v. *Tuckahoe Railroad Co.*, 11 Leigh 78; *Barney* v. *Keokuk*, 94 U. S. 340; *The People* v. *Kerr*, 27 N. Y. 211."

In *Lowther* v. *Bridgeman*, 57 W. Va. 306, 50 S. E. 410, it was held: "2. A reasonable use of a public highway for the purpose of placing poles and wires for a telephone for public use, under legislative authority, is not an additional servitude upon the fee of the abutting land owner in such highway." In the opinion the Court said: "The next question arising is the question of additional servitude. Does the reasonable use of a public highway for the placing of telephone poles and wires for public use create an additional servitude upon the fee of the abutting land owner in such highway? There is much conflict of authority upon this question. The decisions of the various states are not in harmony and cannot be reconciled with any uniform doctrine upon this subject. There are many authorities which hold that the placing of telegraph and telephone lines along the public highway is not an additional servitude upon the fee of the abutting land owner. *McGee* v. *Overshiner*, 150 Ind. 127; *Irwin* v. *Great Southern Telegraph Co.*, 37 La. Ann. 63; *Pierce* v. *Drew*, 136 Mass. 75; *Carter* v. *N. W. Teleph. Ex. Co.* (Minn. S. C. 1895), 5 Am. Elec. Cas. 111; *Julia Building Assn.* v. *Bell Tel. Co.*, 88 Mo. 258; *Herschfield* v. *Rocky Mountain Bell Tel. Co.*, 12 Mont. 102. Many of these cases hold that

the uses of a public highway, prevailing at the time of the taking or dedication of the land for such highway, are not the limits of the uses to which the public is entitled and which the soil owner is deemed to have contemplated, but such uses are to be enlarged to include all of the additional and improved methods of obtaining the same objects and enjoying the same privileges, not, however, to the denial or substantial impairment of the fee owner's use and enjoyment of his abutting property. Many more cases holding that there is no additional servitude upon the fee might be added and an equal or greater number which hold to the opposite doctrine. The cases which hold that there is no new or additional servitude, further hold that the use of the public highway for telegraph or telephone lines must be reasonable. Our case of *Maxwell* v. *Telegraph Co.*, 51 W. Va. 121, is in line with the cases holding that there is no additional servitude by the placing of telephone poles and wires for a telephone for public use along the public highway. JUDGE DENT in delivering the opinion of the Court, says: 'Telephone poles are not things of beauty, yet their utility is so great that their ugliness must be endured until human invention has discovered some more tasteful substitute for them. The public can well afford to surrender a reasonable portion of the public easement in its highways to a public utility of such vastly increasing importance. As the owner of the fee in such highway loses nothing thereby he has no grounds to complain. It puts no additional burden on the fee, but it is a burden alone upon the permanent easement to which it is appurtenant and subservient.' This case is binding authority on this Court and necessarily brings us to the conclusion that there is no additional servitude by the reasonable use of a public highway for the purpose of placing telephone poles and wires for public use along it. We are aware that some authorities make a distinction here between a street of a town or city and a county road in the country, but we see no sound reason for the distinction."

In view of the holdings of this Court in the cases cited, it seems clear that we are committed to the doctrine that the grant of an easement for public road purposes includes all rights and privileges necessary or convenient to the use of the public in travel or transportation of properties of all kinds over, under or along all public highways. Such uses must have been contemplated in the grant in the instant case. We cannot assume that the grant was made and accepted for any limited purposes or methods of travel or transportation. Being a part of the grant for public road purposes, it can not be an additional burden on the fee. It is, in reality, an additional public use. See *Shepherdstown Light & Water Co.* v. *Lucas,* 107 W. Va. 498, 148 S. E. 847; *Nichols* v. *Central Virginia Power Co.,* 143 Va. 405, 130 S. E. 764. We think that transportation of natural gas, whether by public utility or a non-public utility, is transportation of property for public use. The term "public use" as it relates to public highways, is not synonymous with the term "public utility". The whole public, including public utilities, is entitled to reasonably regulated use of the highways, and those charged with the duty of the regulation of such use must determine whether the interests of the public will be best subserved by one or another method of transportation of property.

We have not overlooked the holding in the case of *Hark* v. *Mountain Fork Lumber Co.,* 127 W. Va. 586, 34 S. E. 2d 348. In the opinion in the *Thacker* case the Court pointed out the differences in the facts in that case and the facts in the *Hark* case. We think the discussion there suffices here. Neither are we unmindful of plaintiffs' position that such a permit from the State Road Commission as is involved in this case is valid only if issued to a public utility. Answer to that question is found in the quotations above. We are not, of course, saying that the State Road Commission is possessed of power to grant to one member of the public, whether an individual or a public utility, the exclusive·

right or franchise to the use of such a public highway, or any part thereof. Such easements are acquired and exist for the use of the whole public, not for some one or limited number thereof, to the exclusion or inconvenience of others. Neither are we saying that such use of such an easement for strictly private purposes would not create an additional burden on the fee, or give rise to a cause of action for damages in favor of the owner of the fee. See *Armstrong* v. *Pinnacle Coal and Coke Co.*, 101 W. Va. 15, 131 S. E. 712.

We conclude that the granting of the permit to the Hamilton Gas Corporation by the State Road Commission was an act within the power and discretion of that governmental agency, and that the construction and maintenance of the gas pipe line complained of constitute no additional burden on the fee ownership of plaintiffs in the public highway right of way involved.

The decree of the Circuit Court of Nicholas County is reversed, the injunction issued herein by that court is dissolved, and the bill of complaint filed in the cause dismissed.

*Reversed; injunction dissolved; bill of complaint dismissed.*