# CHARLESTON.

KEATLEY *et als.* v. COUNTY COURT.

Submitted June 11, 1910.   Decided February 6, 1912.

1.  COUNTIES—*Government—Powers of County Court.*
    The county court is the sole judge of how much land is necessary for court house purposes; and, if it has acquired more

than is requisite or desirable for that purpose, it may dispose of the surplus.  (p. 269).

2. SAME.
   The county court has the discretion to dispose of such surplus ground to the United States Government, for the purpose of a government building, at a less price than could be realized by a sale thereof to individuals for private use.  (p., 271).

3. SAME—*Property—Restriction on Power of Alienation.*
   A deed conveying land to a county court for court house purposes which provides that the judicial proceedings for the county shall be held upon the premises, but which does not expressly provide that the title shall revert in case the land should cease to be so used, does not amount to a restriction upon the right of alienation by the county court.  (p. 271).

(BRANNON, PRESIDENT, and ROBINSON, JUDGE, dissent).

Appeal from Circuit Court, Summers County.

Bill by A. J. Keatley and others against the County Court of Summers County and others.  Decree for defendants, and plaintiffs appeal.

*Affirmed*

*R. F. Dunlap,* for appellants.

*T. N. Reed,* for appellees.

WILLIAMS, JUDGE:

The County Court of Summers county was about to sell and convey to the United States Government a portion of its Court House Square in the City of Hinton for the purpose of erecting thereon a government building, and plaintiffs, who sue on behalf of themselves and all other tax payers of Summers county, seek to enjoin it from so doing.  Application for injunction was made to the judge of the circuit court of Summers county, and he denied it; later an injunction was awarded by one of the judges of this Court.  Thereafter the injunction was dissolved and plaintiffs' bill dismissed by the circuit court of Summers county in term, on the 18th of October, 1909; and from that decree plaintiffs have obtained this appeal.  The sole question presented is, has the county court power to dispose of a portion of the public square on which the court house of the county is located?

. On the 24th of November, 1874, the Chesapeake & Ohio Railway Company, in order to secure the location of the court house for Summers county in the Town of Hinton, which had then but recently been laid out as a town, conveyed a certain square of ground to the county court, in consideration that, within a reasonable time thereafter, a court house should be erected thereon and the judiciary proceedings of Summers county should be held upon said premises. Shortly after the conveyance was made it was ascertained that there was a mistake in the description of the land, and that the title to the land really intended to be conveyed had been conveyed to the Central Land Company of West Virginia, and an exchange was made between the county court and the said Central Land Company, whereby the county court obtained title to the square of ground which the county court and the railroad company both thought had been conveyed to it by its deed. The deed from the Central Land Company of West Virginia to the county court, which was made on the 19th of October, 1876, for the square of ground which the county court now owns, refers to the aforesaid deed made by the railroad company and makes the covenants and conditions therein contained a part of this deed the same as if they had been expressly set out in the deed itself. There is no express provision in this deed for a reversion of title in case the land should cease to be used for court house purposes; and hence the terms of the deed do not amount to a restriction upon the power of alienation. Section 16 of chapter 39, Code 1906, expressly provides that words in a devise or conveyance of land to the county court expressing the purpose for which it shall be used, shall not limit or impair the power of the county court to dispose of the same absolutely.

The court house lot is a square of three hundred feet; it is bounded on all four sides by streets, and is enclosed with an iron fence; it is situate near the business portion of the City of Hinton, and is embellished with shade trees and walks, and a fountain near the center of it. The portion which the county court proposes to convey to the United States Government is 120x130 feet off the northeast corner of the square.

It must be admitted that the county court is a municipal corporation created solely for governmental purposes, and is in-

70 W. Va.

vested with only such power and authority as is conferred upon it by statute. But authority may be conferred as well by intendment as by express language. If a statute expressly confers power to do a certain thing, and omits to mention authority to do other things which are necessary to the proper and complete exercise of the power expressly given, such additional power as may be necessary and reasonable for the accomplishment of the purpose expressed is clearly to be implied. This is a familiar rule of construction. And does not section 14 of chapter 39, Code 1906, which invests the county courts with certain power and authority in relation to court houses and jails, clerks' offices, etc., in their respective counties, by implication and by reasonable intendment, confer upon county courts the power and right to dispose of such portions of the ground which they may have acquired for court house purposes, as may not be necessary for the public use? County courts are expressly authorized to provide, at the county seats of their respective counties, a suitable court house and jail; they are also authorized to acquire, by purchase or otherwise, so much land as may be requisite or desirable for county purposes. The statute does not prescribe the quantity which a county court may so acquire; what tribunal, then, is to be the judge of how much is "requisite or desirable?" The county court, of course. Its discretion in this matter is without limitation, and its judgment thereon is not subject to review. In the very nature of things, and for the certain and convenient administration of the municipal government of the county, it was necessary for the legislature to vest such discretionary power as relates to the selection of a location, and quantity of land requisite for court house purposes in some one person or tribunal; and the legislature has seen fit to vest it in the county court. The statute reads, in part, as follows: "The said court may, from time to time, as may seem to them proper, provide, at the expense of the county, new or other building or buildings, at the county seat of their county to be used for the court house and jail or for either, together with convenient offices, as aforesaid, for the clerks of the circuit and county courts; and for that purpose may acquire, by purchase or otherwise, and hold any lands, land or buildings, at the county seat of their county, which may be necessary, and may

enclose, improve and embellish the same; when such new or other building or buildings shall be ready for occupancy, the said county court shall make an order declaring that on a day. to be therein named, the said new or other building or buildings, shall become the court house or the court house and jail of their county, and shall cause copies of the order to be posted at the front door of the new as well as of the old court house, at least twenty days before the day named in the order; and on and after the day named in said order the said new or other building or buildings shall be and become respectively the court house and jail, or the court house or jail, of said county in all respects, and for all purposes. After such change shall have been made the said county court may sell or otherwise dispose of, as may seem to them proper, the building, or buildings, previously used as a court house and jail, or either, and the land on which the same are, or either is situated, and of the interest of the said county therein."

It is insisted that, inasmuch as the statute above quoted expressly authorizes the county court to sell or otherwise dispose of the old court house grounds after it has provided a new court house, it cannot dispose of any part of the grounds once acquired for court house purposes, unless and except in case of a re-location of the court house, and the acquisition of new grounds for that purpose; that, having once acquired ground for a court house, the county court is thereafter bound to retain the whole of it for all time to come, notwithstanding it may later determine that it is neither necessary, requisite, or desirable to do so. This, in our opinion, is entirely too narrow and too restricted a view to take of the purpose of the statute. Such an interpretation would constitute the county court a veritable court of Persia, having no power or authority to correct its mistakes of judgment, and no power given to any higher tribunal to review its action. Such a construction of the law is not reasonable. The county court is not limited to any definite quantity of land which it may acquire for court house purposes, and it, therefore, necessarily follows that it must be the judge of how much is requisite or desirable. The amount requisite or desirable at one time, and under certain conditions, might not be requisite or desirable at another time and under different con-

ditions.   The county court is the sole judge of that question;
it acts ministerially in providing a court house and grounds
for its county, and is vested with legislative discretion in the
matter.    The authority to acquire so much land as is re-
quisite or desirable for a certain purpose, clearly implies the
power to dispose of the surplus, if more than is requisite has been
acquired.   We do not mean to intimate that the county court
is authorized, or would be justified under the statute, to enter
into land speculations with the public moneys.   It could not
buy more land than, in its judgment, is requisite or desirable
for the public purpose, simply with a view of making a profit by
a re-sale of a portion thereof; but circumstances may easily arise
where it is necessary for a county court to acquire more land
than it needs for court house purposes in order to secure a good
location; and in such event we clearly think it would have the
right to do so, and then to dispose of such portion as is not de-
sirable for the public use. In the present case the land was grant-
ed to the county court by the railroad company shortly after the
formation of Summers county and when the City of Hinton was
in its infancy; the purpose of the grant was to secure the location
of the court house at that place; and the quantity of land
conveyed is more than two acres.   Must we say that the county
court cannot dispose of any part of this large square, but is
compelled to hold on to every foot of it, even though it may not
think it requisite for public purposes, and thereby obstruct and
prevent the growth of the community?   We do not say so.
We think county courts are given a larger discretion than this
by the statute.    If the county court should acquire more
land than is requisite for court house purposes, and is com-
pelled to hold on to it, there is no law to compel it to expend the
public money in order to embellish and beautify it.    Con-
sequently, it might happen in some cases, we do not intimate
that it would so happen in this case, that the county court would
suffer the ground to grow up in briars and brambles and thereby
to become a very undesirable public asset; and such a condition
could be remedied only by act of the legislature.

The power of county courts depends upon the construction of
our own statute; consequently the decisions by the courts of
other states in cases involving the powers of county courts in

general furnish us with little light on the question with which
we are dealing.     Some of the cases cited in brief of counsel
relate to the leasing of public property by county courts to
private individuals. .Such cases are not in point; they involve
the misuse of public property.    The want of power to let
property to private uses, does not imply a want of power to dis-
pose of so much of the public property as may not be requisite
for the public use, especially when the tribunal which claims
the right to make the absolute disposition is invested with the
right and power to acquire, and is also the sole judge of the
amount that is requisite for the public use.    *Allegheny Co.* v.
*Parrish,* 93 Va. 615, to which we are cited in brief of appellants,
was decided under a Virginia statute very different from ours,
and, therefore, that decision does not aid us in ascertaining the
powers of county courts in this state under our present statute.

It is insisted that the county court is proposing to sell this lot
to the government at a very much less price than its real value;
that the county court refused a *bona fide* offer of $12,000.00,
made by private individuals, for the same lot.    But it is not
shown for what purpose the property would be used by the
private individuals, if sold to them; and we think the county
court has the discretion to limit the use which is to be made
of the ground which it proposes to sell.    It does not appear
that, if they were limited in the use of the property, they would
give even as much as the United States Government proposes
to give.    They might want it for a livery stable, a canning
establishment, a manufactory, or some other purpose equally
as injurious, or detrimental to the enjoyment, by the public, of
the remaining portion of the square.    The Government wants
the lot for the purpose of erecting a government building
thereon, and the use made of such buildings is well known.
It may very properly be assumed that the Government will erect
a building on the lot that will be an ornament to it; and the
county court may have been influenced by these considerations
to sell it to the Government at $5,000.00, rather than sell
to private individuals at a much larger price.    The county court
clearly has the discretion to do so.

We find no error in the decree appealed from and it will be
affirmed.

After a careful reconsideration of this case, and an examination of the authorities to which we have been cited, we see no reason for changing our former decision. *Allegheny Co.* v. *Parrish,* 93 Va. 615, is not in point. That case was controlled by a very different statute from the one which we are now considering. The Virginia statute authorized the county court to acquire as much as two acres for court house purposes, and gave express direction as to how that portion of the ground not occupied by court house, clerk's office and jail, should be used. This, of course, affected as much as two acres with a public use, and negatived the authority of the county court to dispose of any part of it. In that case the county court of Allegheny county had less than two acres and attempted to dispose of a part of it. If it had had more than two acres and had attempted to dispose of the excess above two acres, the case would have been more analogous to the present one. But, in view of the Virginia statute, the case is not in point. Our statute vests a discretion in the county court to determine the quantity of land "requisite or desirable," and such discretion necessarily implies power to add to what land it may already have, or to dispose of the surplus, if it has too much. Suppose, for instance, the county court should accept a conveyance for more land that it should think requisite or desirable for court house purposes, say ten acres, is it compelled to retain all for the public use? Is it forever bound, by accepting the deed, to hold it all for the public use, even though it may not think it requisite or desirable? Certainly not. Such a view is wholly inconsistent with the power, the discretion, expressly given, which is a continuous one. Whenever the county court may determine that it holds more land than is requisite or desirable, such determination, at once, relieves the surplus of the public trust, and it may be disposed of. The county court is, as it were, a trustee with power to determine how much land shall be requisite or desirable for the trust purposes.

We find very little authority directly in point, because the powers of county courts depend upon statutes which are different in nearly every state of the union. Under a statute of Illinois, which vests no greater power in the board of supervisors of the

county than is given to county courts by the statute of our own state, the supreme court of that state, in *Board of Supervisors etc.* v. *Patterson,* 56 Ill. 111, held: "The proper constituted authorities of a county have the power, under the statute, to sell and convey real estate owned by the county, although such real estate may have been purchased for the purpose of erecting thereon a court house and other buildings." See also *Lyman* v. *Gedney,* 114 Ill. 388, 29 N. E. 289; 11 Cyc. 462; *Reynold's Heirs* v. *Commissioners etc.,* 5 Ohio 204.

We admit the proposition so ably discussed by counsel for appellants, that the county court has only such power as are expressly conferred upon it by the legislature, and such as are necessarily implied in the full and proper exercise of those powers expressly given. But the point is, as we see it, that the power of the county court to dispose of whatever land it may determine is not requisite or desirable for the public use, is clearly and *necessarily implied* from the express grant of power to determine without restriction or limitation, not once for all but as changing conditions may make it necessary, how much is requisite or desirable. Of course the court would have no right to retain the ground and let it for private uses. Such would be a misuse of it, and a violation of the trust, for to retain the property would be, in effect, to say that it is requisite or desirable for public purposes, and it would continue to be affected with a public use, a public trust and it could not be held for one purpose, and the use, at the same time, diverted to another.

Nearly all the cases cited by counsel, and by Judges BRANNON and ROBINSON in their dissenting opinion, involve the misuse of property, not the discretion of the county court to determine how much is requisite or desirable for the public use, and are, therefore, not in point. *Herald* v. *Board of Education,* 65 W. Va. 765, on which they rely, more especially, as controlling this case, we admit is more nearly in point than any other case to which our attention has been called. But, in our view, that case does not touch the point which we have herein decided. That case involved the misuse of public property. The board of education, still holding on to a school house lot for school

purposes, had leased it for oil development, a clear case of misuse of public property.

The decree will be affirmed.

*Affirmed.*

BRANNON, PRESIDENT, (*dissenting*) :

Judge ROBINSON and I dissent. We hold that a county cannot without special legislation sell land acquired for the site of a court house and occupied therefor. A county is a local organization created by the state for limited purposes of government. The opinion by Judge WOODS in *Bank* v. *Lewis County,* 28 W. Va. at page 286, states the law thus: "The distinction between municipal corporations proper, such as cities and towns created by special charters or by general laws, and involuntary *quasi* corporations, such as counties, is this: the former are called into existence by the consent of the persons composing them for the formation of their own local private advantage and convenience; while counties are at most local organizations, which for the purpose of civil administration are invested with a *few functions* of a *corporate* existence, created almost exclusively with a view to the policy of the State at large in the administration of justice, the support of the poor and the establishment and repair of public highways. The public statutes confer on them *all the powers* they possess, prescribe all the duties they owe, and enforce all the liabilities to which they are subject. As corporate bodies of limited powers they rank *very low* down in the grade of corporate existence, and hence they are often called *quasi* corporations. (1 Dill. Mun. Corporations, secs. 18, 25) In the construction of the powers granted to them the courts adopt a strict rather than a liberal construction, the rule being that, where any ambiguity or doubt exists arising out of the terms used by the legislature, it must be resolved in favor of the public." The county is not a trading corporation. Such property is held by the county in trust for the public use, and is not invested in the county for bargain and sale. Such is the principle held in *Foley* v. *County Court,* 54 W. Va. 16. All the authorities say this. I insist that the case of *Herald* v. *Board of Education,* 65 W. Va. 765, is decisive of this case in principle. I appeal to the authorities

there given as sustaining the position of Judge ROBINSON and myself. It holds that a board of education is a *quasi* public corporation existing only by statute, having only the powers given by statute, and such implied powers as are absolutely necessary to execute express powers, and cannot engage in business or make contracts outside of its function touching education. We held that it could not lease a school house lot for production of oil and gas. Speaking of property held by a county for public use the Supreme Court of the United States said in *Meriwether* v. *Garret & Sons,* on page 513 of 102 U. S.; "It holds them for public use, and to no other use can they be appropriated without special legislative sanction." In *County of Allegheny* v. *Parrish,* 93 Va. 615, it was held: "County courts had no authority, either under the Code of 1819 (1 Rev. Code, ch. 71, sec. 16), or the Code of 1849 (ch 50, sec. 1), to authorize or permit the use of lands acquired for a court house, jail and other public buildings, for any other purpose than those mentioned in the Codes. The power of acquisition was for a special purpose, and the use was confined to the purpose for which authority to acquire was given, and subject to the restrictions imposed; and it is immaterial whether the land was acquired by gift, or purchase, if held under the general law. The use to which the court was required to put the land exhausted the purposes for which it could be used. It had no authority to authorize the erection of a law office on the land upon payment of a ground rent. We find that 11 Cyc. 465, conceding the power of counties to sell property owned by it for *private* use, says: "This power, however, is subject to the limitation that a county cannot alienate or dispose of, for its own benefit, property dedicated to or held by it in trust for the public use." This subject is reviewed in *Parrish* v. *Gaddis,* 34 La. Ann. 928, holding as follows: "Property donated to a parish in fee simple, for its use and benefit, and upon which a court house was built and used, cannot be legally sold under a Police Jury ordinance, although the parish seat being changed the building was abandoned and threatened going to ruin. Such sale having been made without legislative authority is a nullity, and so conveyed no title. Real property thus dedicated to public use becomes *extra commercium,* and none but the

sovereign can ever place it once more susceptible of private ownership." The court said it could never lose its public character without the action of the sovereign power. "A grant or dedication of land to use of the town removes it from commerce and individual appropriation." *Louis* v. *San Antonio,* 7 Texas 290. *Roberts* v. *City,* 92 Ky. 95, held that the city of Louisville could not alienate wharf land. *Jus disponendi* is not incident to the ownership of property as a public trust." *Roper* v. *McWhorter,* 77 Va. 214. Municipal corporations cannot sell public property. Dillon, Munic. Corp., secs. 575, 650. "A county is not a municipal corporation, proper, but only a *quasi* corporation; and as such has no power to sell land not applied to a public use." *Jefferson* v. *Grafton,* 60 Am. St. R. 516. The Mississippi court in that case denied the power even as to property not used for a public purpose. In a note to that case are authorities showing that a county cannot sell property used for public purposes. These authorities and many others say that such property is held in public trust, and from that very fact cannot be sold, even not considering the limited power of a county, because it is for public purpose, which would be defeated by sale. But why quote more authority for this position. See the host of cases cited for the proposition supporting the text of Tiedman, Munic. Corp., sec. 208.

But there is another consideration. It rises out of the nature of a county. It has not general powers. In 60 Am. St. R. 520, we find the law generally thus laid down: "Counties are municipal corporations created for the purpose of convenient local government, and possess only such powers as are conferred upon them by law. They must be called *quasi* municipal corporations and their corporate powers are more limited than those of incorporated cities and towns. *Stevens* v. *St. Mary's Training School,* 144 Ill. 336, 36 Am. St. R. 438, and note. See monographic note to *Leake* v. *Lacy,* 51 Am. St. R. 119." Judge Woods said in *Bank* v. *County,* 28 W. Va. p. 286: "As corporate bodies of limited power they rank *very low* in the grade of corporate existence." He there distinguished them from municipal corporations. They have not the power of municipal corporations, and we have seen that municipal corporations cannot sell the public property. "A county acts wholly under a

delegated authority and can exercise no power which is not in express terms or by fair implication conferred upon it." *Thompson* v. *Lee County*, 3 Wall. 327, 330. "The county court is a corporation created by statute and can only do such things as are authorized by law and in the mode prescribed." *Goshorn* v. *County Court*, 42 W. Va. 735. I have said that a county court is not a business, trading corporation. Its powers are derived from the constitution and statute. It is not a trader in the real estate market. There is no power given it in the statute to sell the public property, it cannot be implied. First, because it is against public policy to sell the public property; and, second, because a county is only a kind of a corporation, of low degree as to power. In *Supervisors* v. *Gorrell*, 20 Grat. 484, it was seriously questioned whether a county court could sell a court house lot though no longer needed upon removal of the court house. It was so serious a question that the legislature of our state provided a statute now found in chapter 39, section 14, Code 1906, authorizing the county to sell the court house land upon a change of location of the court house. This impliedly forbids sale under any other circumstance. "The lands belonging to a county can be sold and conveyed only in the manner pointed out by statute." 7 Am. & Eng. Ency. L. 937. "Proceedings of public bodies: Counties. There is no principle more firmly established or resting on sounder reasons than the rule which requires public bodies when acting under special powers to act strictly within the conditions prescribed." *Douglas County* v. *Kellar*, 43 Neb. 635.

I would not give county courts this important power by mere implication. To do so would militate against public policy. There is a sentiment that should not be lost sight of, in addition to the practical. The court house land was acquired to be held for generation after generation. Because so much ground may not be needed just now those who come after will surely need it. Lots are sold from it. High houses and noisy manufactories are built up against or close to the court house, shutting off light and air and producing a noise. In the Virginias, as elsewhere, the Court Green is historic and sacred. Upon it generations gone have met from all parts of the county in social and friendly intercourse. A great place for the communion of

the people. Upon its green grass, under the shade of its trees, our people have thus met time out of mind and rested during the sessions of the courts.  Suitors, jurors, witnesses, instead of being tied down to benches in the hot, crowded court room, repair there to await the crier's call.  There too the children play. It is a park for the poor who have not the rich man's lawn. And where shall be held, in the hot summer, those great meetings of the people in the political canvass to hear the orators? How valuable within the experience of all of us is the court house ground for this important purpose.  Away goes the old Court green.  Commerce is taking even it away.

Later, I find *McIlhinny* v. *Trenton,* 12 Ann. Cas. 23, and *Peters* v. *City,* 21 Ann. Cas. 1069, and notes, which will support this opinion.