# CHARLESTON.

KILLGORE v. COUNTY COURT OF CABELL COUNTY.

Submitted April 17, 1917.    Decided April 24, 1917.

1. RAILROADS—*Right of Way—Limitation by Deed.*
   A grant of land to a railroad company is not limited to an easement for the construction of railway tracks thereon by a clause in the deed that such land is conveyed "for the construction of a double track of railway." (p. 285).

2. SAME—*Right of Way—Title—Forfeiture—Discontinuance of Use.*
   A grant of a tract of land to a railway company by a deed which contains the following clause, "for the construction of a double track of railway" is not subject to be defeated in case said railway company should cease to use said land for the purpose mentioned in said deed. Such clause is declaratory of the purpose to which said land is to be applied, and does not create a condition subsequent forfeiting the title of the railroad company for non compliance therewith. (p. 286).

Error to Circuit Court, Cabell County.

Ejectment by Joseph Killgore and others against the County Court of Cabell County. Judgment for plaintiffs, and defendant brings error.

*Reversed, judgment for defendant.*

*Henry Simms,* Prosecuting Attorney, for plaintiff in error.

*R. L. Blackwood* and *C. W. Freeman,* for defendants in error.

RITZ, JUDGE:

In the year 1870 Thomas W. Killgore executed a deed to the Chesapeake & Ohio Railway Company, the granting clause of which is: "Witnesseth: that the said parties of the first part in consideration of the sum of six hundred dollars in hand paid and for the further consideration of the advantages and benefits which will enure to them by reason of the construction of said railroad, do grant to the said Chesapeake, and Ohio Railroad Company, for the construction of a double track of railway, through certain section of land through the land owned by them situated in Cabell County, containing about 197 acres, bounded on the east side by *Harbey* Rece, south of Mud River, west by John Gwinn, south by Newman and others, the said section being described as follows:"

Shortly after the making of this deed the railway company constructed its railroad over the strip of land, and continued to operate the same thereon until about the year 1907, when it changed the location of its tracks in order to secure a better grade and alignment therefor. Thereafter, in the year 1913, it executed a deed conveying its old right of way, including this strip conveyed to it by Killgore, to the defendant, for the purpose of constructing a county road or highway thereover. The plaintiffs, being the heirs-at-law of Thomas W. Killgore, brought this suit in ejectment against the defendant county court to recover this strip of land. Their contention is that the conveyance from their ancestor to the railway company only conveyed an easement over the strip of land for the purpose of operating a railroad thereon, and when it was abandoned for this use the railway company no longer had any title or interest therein; and, further, that the language used in the deed from Thomas W. Killgore to the railway company was effectual only to grant the strip of land to the railway company upon condition that it maintained thereon a double track railroad, and upon the failure of the railway company to so maintain a double track railroad upon this strip of land the title thereto reverted to them as heirs-at-law of the grantor in the deed. The case was submitted to the judge of the circuit court upon

a statement of agreed facts which, so far as they are material to the determination of the questions arising here, are as above detailed. The court below found for the plaintiffs, and rendered judgment accordingly.

Plaintiffs' first contention is that the effect of the language above quoted from the deed made by Thomas W. Killgore to the Chesapeake & Ohio Railway Company was to grant only an easement, and they rely on the case of *Uhl* v. *Railroad Co.,* 51 W. Va. 106, as authority for this contention. In that case the deed of conveyance to the railway company granted by express terms a right of way for its railroad over the lands of the grantor. In this case the deed grants the land described therein, and recites the purpose for which it is to be used by the railroad company. In the Uhl case the question for decision by the court was whether or not the grant of a right of way was the grant of an easement or was the grant of the land itself. It turned upon what meaning was to be given to the words, "right of way" used in the granting clause of the deed, and the court came to the conclusion that, taking into consideration the fact that the grantee was a railroad company, and that it needed this land only for the purpose of constructing its railroad thereon, and the further consideration that the deed itself only granted the right of way over the land, its effect was only to vest in the railway company an easement, and not to grant the land itself.

In *Carper* v. *Cook,* 39 W. Va. 346, this court held in the third point of the syllabus that: "A vendor, who sells a lot to a board of education for school purposes and signs a writing stating the purchase and the terms thereof, can not recover possession of such lot in an action of ejectment from a claimant under such board of education, even though such lot has been abandoned for school purposes and converted to other uses."

Again, in *Keatley* v. *County Court,* 70 W. Va. 267, it was held in the third point of the syllabus: "A deed conveying land to a county court for court house purposes which provides that the judicial proceedings for the county shall be held upon the premises, but which does not expressly pro-

vide that the title shall revert in case the land should cease to be so used, does not amount to a restriction upon the right of alienation by the county court.''

It has been held in many cases that words used in a deed declaratory of the purpose for which the land is granted do not have the effect of limiting the estate granted by the deed. *Downen* v. *Rayburn*, 214 Ill. 342, 3 Am. & Eng. Anno. Cases, 36, and note.

We are, therefore, of opinion that this deed conveyed to the Chesapeake & Ohio Railway Company an estate in fee simple absolute in the land therein described.

Plaintiffs further contend that even if the deed above referred to conveyed the land, and not an easement therein, to the railway company, such conveyance was upon a condition subsequent, that is, that the railway company would construct and operate over said strip of land a double track railway, and that when the railway company ceased to so construct and operate said railroad over said strip of land the condition subsequent was broken and the title to the said strip of land reverted to the plaintiffs as the heirs-at-law of the grantor in said deed. Conditions in conveyances which have the effect of forfeiting the title vested in the grantee are looked upon with disfavor by the courts, and unless the language used clearly imports the intention of the parties that the title should revest upon non-compliance with the condition, the deed will not be held to be a deed upon condition subsequent. Ordinarily grants upon such conditions contain a provision in them that upon non-compliance with the conditions specified the title shall revert to the grantor. However, it is not necessary that the deed shall contain such language if it is clear from the language used by the parties in the deed as a whole that it was their intention and purpose that the title should revert to the grantor upon a failure to use the land for a particular purpose, or upon the failure to perform a specified condition. However, in order that the language in a deed may be given the effect of a condition subsequent it must clearly appear that the parties thereto intended that, in case of the grantee's failure to use the land for a particular purpose, or to do a particular thing,

he should forfeit his interest therein. Language used in a
deed declaratory of the purpose of the grantee will not or-
dinarily have the effect of creating a condition subsequent,
and of forfeiting the interest which may be granted to him
in the land by a failure to appropriate it to the purpose so
declared.   See *Keatley* v. *County Court*, 70 W. Va. 267;
*Carper* v. *Cook*, 39 W. Va. 346.

In the case of *Railway Co.* v. *Honaker*, 66 W. Va. 136, a
deed was under consideration which granted to certain trus-
tees in trust for the use and sole and exclusive benefit of the
Southern Methodist Church, a tract of land to be used by
erecting thereon a camp ground, for the purpose of publicly
congregating for worship, and for any and all purposes con-
sistent with the discipline of such church not contrary to the
law of the State of West Virginia.   It was held that this pro-
vision in the deed did not create a condition subsequent, and
that the failure of the trustees of the church to use the land
for the religious purposes declared in the deed, did not cause
the title thereto to revert to the grantor in the deed, or his
heirs.

In *Shreve* v. *Norfolk & Western Railway Company*, 109
Va. 706, it was held that a deed conveying land to a railway
company for a depot and other railway purposes, in consid-
eration of the grantee's agreeing to erect and maintain a
depot on the land conveyed, but containing no clause of for-
feiture, or right of re-entry for failure to do so, vested in the
grantee a fee simple estate in the land conveyed, and the
super-added words did not create a condition subsequent,
but only an agreement or covenant on the part of the grantee
to use the land for the purposes specified.

In the case of *Sohier* v. *Trinity Church*, 109 Mass. 1, it
was held that the words, "upon condition always to use the
premises for public worship" in a deed of land to a religious
society did not create a condition subsequent.

In *Noyes* v. *Railway Co.* (Ill.) 21 N. E. 487, it was held
that the conveyance of land to railroad companies, "in con-
sideration of $1, and of the uses hereinafter mentioned, to-
wit, for the erection and maintentance thereon of the freight-
houses of the said companies, together with sidetracks, turn-

outs, switches, and buildings, and for such other general railroad purposes as may be necessary and expedient, "vests the absolute title in said land in the railway company, and is not a conveyance upon conditions subsequent.

See also *Roanoke Investment Co.* v. *Railway Co.,* 108 Mo. 50; *Chapin* v. *Harris,* 8 Allen 594; *Greene* v. *O'Connor,* (R. I.) 19 L. R. A. 262. In this latter case it is held that a condition subsequent is not created in a deed of land for a highway by the words, "upon condition that the said strip of land shall be forever kept open and used as a public highway and for no other purpose."

In *Downen* v. *Rayburn,* 214 Ill. 342, 3 Am. & Eng. Anno. Cases 36, it was held that: "Thus, where a deed conveys lands to certain trustees and their successors in office forever 'to be used as a church location,' the latter clause will be construed, in the absence of other words or expressions evidencing a contrary intent, to be merely declaratory of the purpose of the conveyance and not as rendering the estate conveyed conditional."

So in 8 R. C. L., at page 1103, the doctrine as to when words used in a deed should be held to be merely declaratory of the purpose of the grantee, and when a condition subsequent, is laid down as follows: "A condition will not be raised by implication from a mere declaration in the deed that the grant is made for a special and particular purpose without being coupled with words appropriate to make such a condition. Such recitals are usually construed as giving rise, at most, to an implied covenant that the grantee will use the property only for the specified purpose. They are merely to restrain the generality of the preceding clauses, and in the case of sales to municipal and other corporations are considered as having been inserted merely for the purpose of showing the grantee's authority to take, even though the authorization under which the land is taken itself limits its use to the purpose specified, and it has been suggested that the probability of the grantor's knowledge that the property might subsequently become unsuitable for the purpose specified may tend to the conclusion that he intended a mere covenant. In public grants a conditional estate may

be created by the use of words which declare that the grant is made for a certain purpose, or with a particular intention, on payment of a certain sum; but this rule is not applicable to grants or gifts except such as are purely voluntary, and where there is no other consideration moving the grantor than the purpose for which the estate is declared to be created. Such words do not make a condition where used in deeds of private persons.''

So in 2 Devlin on Real Estate, §970, it is stated: ''Conditions subsequent, having the effect in case of a breach to defeat estates already vested, are not favored in law, and hence always receive a strict construction.'' ''A deed will not be construed to create an estate on condition, unless language is used which according to the rules of law, *ex proprio vigore,* imports a condition, or the intent of the grantor to make a conditional estate is otherwise clearly and unequivocally indicated.'' ''Conditions are not to be raised readily by inference or argument.'' Where a deed is made upon condition that the grantee shall forever keep up and maintain a fence on the line between the land conveyed and the land of the grantor, a neglect to keep up the fence after the death of the grantee will not forfeit the land. Or, in other words, to bind the heirs or assigns to the performance of a condition subsequent, the condition must expressly mention them. Where the clause is a covenant, the legal responsibility for its violation is a liability to respond in damages, while a breach of the condition forfeits the estate. A condition subsequent is not created by the words that ''the land hereinafter described shall be kept by said board of police for the use of a court house and jail for the benefit of said county'' and the words, ''to have and to hold the same . . . for the use of said county as aforesaid.'' This language is as consistent with the grantor's intent to repose a trust and confidence in the grantee as they are with an intent to impose a condition the breach of which would work a forfeiture. A condition subsequent will not be held to have been created unless the language of the deed creates an estate upon condition in express terms, or unless the en-

tire instrument shows the grantor's intent to create a conditional estate.''

We conclude from the foregoing authorities that the language used in this deed does not create a condition subsequent, but is merely declaratory of the use to which the grantee in the deed intended to apply the land granted. The failure to apply it to this use would not forfeit the title of the grantee thereto and revest the same in the grantor. This conclusion is in accord with our former holdings in the cases of *Carper* v. *Cook*, 39 W. Va. 346; *Keatley* v. *County Court*, 70 W. Va. 267; and *Railroad Company* v. *Honaker*, 66 W. Va. 136.

It follows that the judgment of the Circuit Court of Cabell County will be reversed; the court's findings set aside; and judgment rendered here for the defendant upon the statement of agreed facts.

*Reversed, judgment for defendant.*