CHARLES THACKER

*v.*

ASHLAND OIL & REFINING COMPANY

(CC 711)

Submitted September 25, 1946. Decided December 21, 1946.

*Scott & Ducker,* for plaintiff.

*E. L. McDonald, S. M. Burnam,* and *Marcum & Gibson, Ferguson & Hammock* and *Charles A. Case,* for defendant.

RILEY, JUDGE:

This certificate involves the rulings of the Circuit Court of Wayne County, in overruling defendant's demurrers to the original and amended bills of complaint in the suit of Charles Thacker against Ashland Oil & Refining Company, in which plaintiff prays that defendant, its agents, servants, employees, officers and representatives be enjoined from the further use of two six-inch pipe lines along secondary road No. 1, in the transportation of gasoline and other petroleum products from its two plants in Boyd County, Kentucky, erected for the purpose of manufacturing gasoline and other petroleum products, to defendant's terminal station at Kenova, West Virginia.

The pertinent allegations of the original bill of complaint are:

By two deeds dated September 27, 1919, and by a third dated February 3, 1920, plaintiff became the owner

in fee of three tracts of land situate on Big Sandy River, Ceredo District, Wayne County, which, according to a survey made in 1933, had an acreage of 27.062 acres, but which has been increased by accretion from the river by five acres, more or less; that the public road or highway originally known as Wayne County's Road Project No. 152, bordering on plaintiff's land on the eastern side and adjacent thereto, has been used as a public road for many years prior to and since plaintiff acquired his lands.

By deed dated May 23, 1930, plaintiff, his wife joining therein, for the consideration of one dollar and "the benefits that will accrue to said parties of the first part from the construction of a (or a change in the) County District road over their lands known as the Big Sandy road, leading from Kenova to Coal Branch", granted to the County Court of Wayne County a parcel of land to be used "for County road purposes". The land conveyed is alleged to be a part of a larger tract owned by the grantors, and a part of the right-of-way included in Wayne County Road Project No. 152, and contains six/tenths acres, more or less, twenty-five/one-hundredths of which was contained in the "old road right of way, leaving 0.35 Acres to be acquired by this instrument", which latter is situate adjacent to the old road right-of-way on the west and extends from the northerly-northeasterly corner of plaintiff's land southerly up Big Sandy River and along the old road right-of-way to the south-easterly corner of plaintiff's lands, a distance of about twelve hundred seventy feet.

Prior to laying of the two pipe lines, plaintiff had built a dwelling house and barn nearby the land conveyed by said deed and immediately west thereof at respectively thirty-one feet and four feet from the common line between the strip of land, conveyed to the county court by the deed of May 23, 1930, and plaintiff's land, the house having been occupied by plaintiff and his family since 1923. Plaintiff alleges that the dwelling house is worth about five thousand dollars and the land is valuable for

the raising of corn and the conduct of a dairy business, and has a production under normal conditions of approximately two thousand bushels of corn annually.

Plaintiff is a resident, citizen and taxpayer of Wayne County, and has been such from the time he purchased said lands to the present time; and defendant is a corporation under the laws of the State of Kentucky which, prior to the laying of the pipe lines, had built two plants for the purpose of manufacturing gasoline and other products of petroleum, located on the Big Sandy River a distance of one and a half miles above plaintiff's lands, and defendant has been engaged in the operation of the first plant and the distribution of petroleum products therefrom and is preparing, as plaintiff is informed and believes, to operate a second plant for the same purposes, and transport the products from both plants through the two pipe lines to its terminal station at Kenova.

Upon defendant's written application, dated July 6, 1943, the state road commission gave to defendant permission to install two six-inch pipe lines parallel to and a minimum distance of eighteen feet from the center line of the road, restricting the installation to not less than twenty-four inches below the surface of the land and eighteen inches below the ditch line. The certificate of the commission provides that the permit is "subject to all regulation now or hereafter adopted by the State Road Commission"; that the lines are to be constructed and maintained as directed by the commission; and that they are to be used solely for the purpose of carrying petroleum oil products, and not for natural or artificial gas. When plaintiff heard that an application might be made to the commission for a permit for the construction of the lines, he protested to the state road commission, controverting its authority to grant the permit, and asserting that the lines, if laid on the proposed location, would be a hazard to plaintiff, his family and others, and that the lines are apt to break under stress of continuous slipping of the earth in which they were to be laid.

Plaintiff did not know that permission had been granted prior to July 28, 1943, but on July 31, 1943, defendant entered upon the strip of land and began laying the two six-inch pipe lines on the part of said strip which was conveyed to the county court by the Thacker deed of May 23, 1930. On July 31, 1943, plaintiff served a written notice upon defendant, stating that defendant is without authority to lay the pipe lines; that they constitute an unlawful hazard to the safety of plaintiff, his family and property, and interfere with the use of the highway; and that unless defendant ceases its work in installing the lines, plaintiff would seek such redress as the law might afford. Later on August 3, 1943, the pipe lines not having been fully installed, plaintiff served an additional notice upon defendant. Notwithstanding these notices defendant continued the work of installing the lines, placing them on the outer two feet of the state road commission's right-of-way mentioned in the permit. Upon information and belief, plaintiff alleges that defendant has been operating the pipe lines in the transportation of high test octane gasoline and other gasoline and petroleum products, propelled from defendant's plants to its terminal by a centrifugal pump or compression devices at a very high pressure, so that the operation of the lines constitutes an unlawful hazard to plaintiff, his family, and the users of the highway and damage to plaintiff's property; and that if no direct injury be done to plaintiff's property and the improvements there will result a diminution of the value of the property, and said pipe lines constitute a public nuisance.

Plaintiff alleges that the permit from the state road commission is unlawful, because defendant is not a public utility or a public service corporation, but is engaged in private business and cannot be given or use a grant of such nature in a public road, and that such authority does not reside in the commission under Code, 17-16-6, referred to in the permit, nor by any other statute, and further that no rules or regulations promulgated by the commission or the commissioner under the Constitution and laws of the State of West Virginia can empower an

individual or private corporation to install, maintain or operate such pipe lines in a public road for private purposes.

It is further alleged that the Norfolk and Western Railway Company's tracks are situate immediately east of plaintiff's lands and the road at an elevation above the same, along plaintiff's lands and parallel to the public road; that by reason of the weight of the tracks and equipment of the railway structure, the embankment, grade and fill for the same, and the nature of the soil and strata underlying the roadbed of said railway, slips and slides have occurred on the railway right-of-way and roadbed, the effect of which has been to move the public road, or parts of it, and that despite repeated efforts of the railway company such movement will continue and there will be further slips and slides down the hill, against and into the public road, resulting in its further disturbance, thus greatly enhancing the danger and hazard to plaintiff, his family, his property, and to others using the public road by reason of breaks in the pipe lines and the escape of gasoline and other petroleum products therefrom.

It is alleged that the laying, maintenance and operation of the pipe lines and the passage of gasoline and other petroleum products therethrough is a public and a private nuisance, of which plaintiff, as the owner and user of the said lands and said road, and as a resident, citizen, taxpayer and abutting owner, has a right to complain.

And finally the bill of complaint prays that defendant, its agents, servants, employees, officers and representatives be restrained from further use and employment of the pipe lines in the road, and that they be required to remove the same along and adjoining plaintiff's lands.

During the pendency of this suit, plaintiff filed an amended and supplemental bill of complaint, in which the prayer of the original bill was renewed, and which asserts that on December 17, 1943, one of the pipe lines

described in the bill broke at a point about opposite the center of plaintiff's barn; that gasoline was discharged therefrom and ran in a stream over the bank of the road and became dammed up against plaintiff's barn for one and a half hours before defendant repaired the break; that the break was caused by pressure from the hillside and under the road as described in plaintiff's original bill; that the pipe lines will break again if permitted to remain in the road; and that, upon information and belief, defective pipe and unskillful methods have been used in the installation of said lines and in the maintenance thereof. The amended and supplemental bill reiterates the allegation of the original bill that the pipe lines and the fluid which passes through them under pressure are a nuisance and menace; and also alleges that a culvert header of concrete about eight feet long, four and a half feet high, and fourteen and a half inches thick on the edge of the road at a point a short distance above plaintiff's house and barn where the lines run over the culvert behind the header has been caused to break by the slipping of the earth, thereby causing the concrete reenforcement to part in the middle, which, upon information and belief, will cause another break in the lines at any time at that point.

Initially, it is contended by counsel for plaintiff that the state road commission was without power to issue to defendant, a private corporation operating for private purposes only, the permit purporting to authorize defendant to install in the public road in question the pipe lines described in the permit. In the consideration of this question, it is to be noted that pursuant to "The Good Roads Amendment of 1920", to the Constitution of West Virginia, directing the Legislature to make provision by statute "for a system of state roads and highways connecting at least the various county seats of the state, and to be under the control and supervision of such state officers and agencies as may be prescribed by law", the Legislature enacted into law Chapter 112 of the Acts of 1921, which, as appears from the enactment itself, constituted a comprehensive statute providing, among other

things, for "a complete system of laws for this state governing the construction, reconstruction, maintenance and repair of all public roads, ways and bridges, and the regulation of traffic thereon * * *." Chapter 40, Acts of the West Virginia Legislature, First Extraordinary Session, 1933, amending and reenacting the 1921 statute, in Article II-A, Section 9 thereof, provides that the commissioner shall exercise "general supervision over the state road program and the construction and maintenance of state roads" and "any other power that may be necessary or proper for the orderly conduct of his business and the effective discharge of his duties."

Code, 17-16-7, provides that it is unlawful for any county court, "or other tribunal acting in lieu thereof", to grant any permit to operate or maintain a main gas line with a diameter exceeding four inches in any right-of-way of a public road, and further:

> "That nothing herein contained shall be so construed as to prevent any oil or gas company or person having a proper permit or franchise from transporting oil or gasoline along any of the public highways of this State, nor to give such company a franchise without paying to the landowners through whose lands such road passes the usual and customary compensation paid or to be paid to the landowners for such right of way. * * *."

And Acts, 1933, First Extraordinary Session, Chapter 40, Article IV, Section 8, provides:

> " * * * nor shall any person, firm or corporation enter upon or construct any works in or upon such road, or lay or maintain thereon or thereunder any drainage, sewer or water pipes, gas pipes, electric conduits or other pipes, * * * except under such restrictions, conditions and regulations as may be prescribed by the state road commissioner."

The written permission of the state road commission to defendant, Ashland Oil & Refining Company, evidently was given under Code, 17-16-6, which reads:

> " * * * No road or highway shall be dug up for laying or placing pipes, sewers, poles, or wires, or for

other purposes, * * * without the written permit of the commission or county court, or its duly authorized agent, and then only in accordance with the regulations of the commission or court. The work shall be done under the supervision and to the satisfaction of the commission or court; * * *."

Thus it appears that it was the policy of the Legislature in the enactment of the aforesaid statutes to provide a comprehensive and all-embracing system of statutory law, establishing a general state road system, consisting of the primary and secondary roads of the State and providing for and investing in the commission and the commissioner the exclusive power over the construction, maintenance and control of said system and to delegate to the commission, or its duly authorized agent, the exclusive right to grant to any corporation or person a written permit to lay, place, maintain and operate pipe lines for the transportation of gas, oil or gasoline, in and along the right-of-ways of primary and secondary roads, supervise construction of the same, and prescribe restrictions, conditions and regulations covering the laying and maintenance of said pipes, subject, however, to the proviso contained in Code, 17-16-7, to the effect that no permit shall be granted to operate or maintain a main gas line with a diameter exceeding four inches in any roadway of a public road. In this regard it should be noted that (1) the proviso, contained in Code, 17-16-7, does not provide that the permittee be a public utility engaged in the transportation of oil or petroleum products or that such transportation shall be for public purposes; and (2) the permit under consideration provides expressly that the pipe lines embraced therein are to be used solely for the purpose of carrying petroleum products and not "natural or artificial gas."

The plaintiff claims that the instant permit is invalid because the state road commission is without power to grant a permit to a private individual or corporation to lay, maintain and operate pipes on a public road for the transportation of oil or petroleum products for private purposes. Attention is called to the fact that the fore-

going statutes do not expressly authorize the issuance of such a permit. It is to be noted, however, that there is no express requirement contained in the statutes that the permittee shall be a public utility engaged in a public enterprise. The use of public highways and streets for the last-mentioned purpose has been recognized by this Court in a number of cases. *Watson* v. *Fairmont & S. R. Co.,* 49 W. Va. 528, 39 S. E. 193; *Hardman* v. *Cabot,* 60 W. Va. 664, 55 S. E. 756; *Fox* v. *City of Hinton and Va-Western Power Co.,* 84 W. Va. 239, 99 S. E. 478; *Karcher* v. *Wheeling Electrical Co.,* 94 W. Va. 278, 118 S. E. 154. In the *Hardman* case, point 1, syllabus, this Court held: "A pipe-line, laid in a public rural highway, under proper authority, and used for supplying the public with natural gas for heating and illuminating purposes, though imposing an additional public service upon the road, is not a use in excess of the right of the public in such road, and does not impose an additional burden upon the estate in fee in the land." In *Watson* v. *Fairmont & S. R. Co., supra,* this Court in speaking of the use of public highways by the public said, "As new methods of use and occupation, consistent with the old methods, result from invention, discovery and progress they must be admitted." The same thought was expressed by the Supreme Court of Oklahoma in *Nazworthy* v. *Illinois Oil Company,* 176 Okla. 37, 47, 54 P. 2d 642, in the following language: "* * * the * * * new or different use of the highway, or new or different method of transmission or transportation, is but a further proper use of the highway in line with the general purpose of highways; that general purpose of highways being that subject to proper supervision, they may be used by the public and by common carriers for such form of travel, transportation, and transmission as may be in keeping with the declared policy of the state; a chief restriction being that each such use of the highway shall not improperly interfere with the rights of others in the use of the same highways. The proper use of the highways by oil pipe lines located, laid, and maintained under proper supervision does not interfere with the various other uses of

the highways." But, in our opinion, the use of the public highways for the transportation by pipe line of oil or other petroleum products should not be confined to public purposes. Of course, such transportation should not interfere with public travel and should not constitute a hazard or a public nuisance. In *Daniels* v. *Cranberry Fuel Co.*, 111 W. Va. 484, 163 S. E. 24, this Court held that where proper public authority has constructed a public road through a trestle supporting a coal tipple with consent of the owner and designated where, on each side of the road, he shall set his supporting pillars, giving a road space for easy, safe and convenient passage, and the pillars have remained there in proper repair for over ten years without objection or complaint from any one, the owner will not be deemed to be maintaining a public nuisance *per se* within the meaning of Code, 17-16-1, notwithstanding that the timbers constituting such tipple are situate within a thirty-foot right-of-way, the fee in which was vested in the county court. This Court said at page 487 of the opinion: "Defendant had a right to maintain its trestle over this highway under proper regulations and conditions imposed by the road authorities." And, in *The Clay County Court* v. *Adams*, 109 W. Va. 421, 155 S. E. 174, this Court held in point 3 of the syllabus:

"The owner of coal with mining rights, including use of the surface in mining and marketing his coal, has a right to transport his coal across and above a public road established on the land, under proper regulations, conditions and restrictions, designed for full protection of the public in the use of the road."

In that case the evidence was in conflict as to whether some of the supports of the tripple were within the thirty-foot roadway of the road as it was originally established. It appears, however, that the state road commission took over the road, began the construction of a state highway and required the county court to furnish a right-of-way 105 feet wide. The new project necessarily embraces the site of the tripple whether partly on the

thirty-foot roadway or entirely off it. The state road commission, after notice to Adams, caused the tipple to be blown up and removed. The county court brought a proceeding in eminent domain to ascertain what compensation should be paid Adams for his structures, buildings and mineral and mining rights taken or damaged by the public improvement, and this Court sustained a judgment in defendant's favor based upon a jury verdict awarding in that suit damages resulting from such improvement. In the two last-mentioned cases the construction on the public road was for purely private purposes and the test supplied by the Court in those cases is whether the construction interfered with the public travel and constituted a public nuisance. Applying this test to the instant case, we think that the commission had the statutory power to issue the permit in question.

But counsel for plaintiff, evidently mindful of the fact that the pleadings show that plaintiff's dwelling house is within a distance of one hundred feet from the pipe lines in question, cite Code, 54-1-5, which reads: "No line for the transportation of natural or artificial gas under pressure or for the transportation of petroleum oil, and no tank for storing oil or natural gas, shall be laid or constructed within one hundred feet of any occupied dwelling house, without the consent of the owner. This section shall not apply to the territory within municipal corporations." This section of the Code is within the realm of eminent domain. Originally, it was enacted into law by Chapter CXIII, Acts of the West Virginia Legislature, 1891, entitled "AN ACT to amend chapter fifty-two of the code of West Virginia, concerning companies organized for the purpose of transporting natural gas, petroleum or water through tubing or pipes, by adding an additional section thereto." Section 24 thereof reads in part as follows:

"That a company, organized for the purpose of transporting natural gas, petroleum or water, * * * may appropriate so much thereof [land], as may be deemed necessary for the laying down of such tub-

ing and piping and for the erection of tanks and the location of stations along such line, and the erection of such buildings as may be necessary for the purpose aforesaid; such appropriations shall be made and conducted in accordance with the law providing for compensation to the owners of private property taken for public use; *Provided,* That no dwelling house, yard, or garden shall be taken for such purpose, nor shall any oil tank, gas or oil pipe line be erected or laid within one hundred feet of any occupied dwelling house without the consent of the owner thereof. And so far as the rights of the public therein are concerned, the county commissioners as to public roads, and the council of any municipal corporation, as to streets and alleys, in their respective jurisdictions, may, subject to such regulations and restrictions as they may prescribe, grant to such company the right to lay such tubing and piping therein; * * *."

At the time of the enactment of said Chapter CXIII and until the revision of the Code in 1931, it was appended to said Chapter 52, which dealt with corporations. Code, 54-1-5, above quoted, was taken from Chapter CXIII of the Acts of 1891 and, according to the Revisers' Note "The remaining provisions * * * are covered in § § 2 and 3 of this article [54-1] in art. 2 of this chapter [Chapter 54] and in the statutes with respect to common carriers and the use of streets and public highways by common carriers." Chapter CXIII was under appraisement by this Court in *Hardman* v. *Cabot*, 60 W. Va. 664, 55 S. E. 756, decided in 1906, before the enactment of the present Road Law. In that case the owner of a tract of land, through which ran a public rural highway, in which the owner held a dominant tenement, sought to enjoin the location, maintenance and operation of a gas pipe line in that part of the road running through his lands, which the defendant Cabot was constructing under a permit granted by the County Court of Calhoun County. The record in the *Cabot* case discloses that the purpose for which the pipe line was being constructed was supplying the public with natural gas for heating and illuminating purposes, and the Court held that such

construction "is not a use in excess of the right of the public in such road, and does not impose an additional burden upon the estate in fee in the land". But the Court said that it is incumbent upon plaintiff to show that in granting to defendant the privilege of laying and operating the pipe line, the county court exceeded its authority; and by way of *dictum* said, "This might have been done by alleging and proving that the purpose for which the privilege was granted, and the use to which the road was thereby subjected, were not public in their nature * * *." The Revisers of the Code of 1931 and the Legislature in the enactment thereof, did not deign to incorporate in Chapter 17 of the Code (the Road Law) that part of Chapter CXIII, Acts of 1891, now contained in Code, 54-1-5, and we must assume that in view of the comprehensive nature of Code, Chapter 17 (the Road Law), it was intended by the Revisers and the Legislature that the section should not apply to public roads. Evidently the legislative intendment was that the inhibition contained in Code, 54-1-5, as to the construction of pipe lines for the transportation of natural or artificial gas under pressure or the transportation of petroleum oil, and tanks for the storing of oil and natural gas within one hundred feet of an occupied dwelling house without the consent of the owner, should apply only to land taken under the right of eminent domain. In point 7, syllabus, of *State* v. *Harden,* 62 W. Va. 313, 58 S. E. 715, this Court held: "A statute revising the whole subject matter of a former one, or a former series of statutes, becomes, by reason of its scope and purpose, to the full extent of the terms used and necessarily implied, the exclusive rule and law, governing the subject, and is, therefore, a substitute for the former statute or statutes, repealing such parts thereof as are inconsistent with the new act, and not a mere amendatory act, adding to or detracting from the former law." See also *Farmers & Merchants Bank of Reedsville* v. *Kingwood National Bank;* pt. 6, syl., 85 W. Va. 371, 101 S. E. 734; *Elite Laundry Co.* v. *Dunn, d/b/a Dunn Hospital,* 126 W. Va. 858, 865, 30 S. E. 2d 454; and *State* v. *Hinkle,* pt. 1., syl.,

129 W. Va. 393, 41 S. E. 2d 107, decided at this term of Court. Under these authorities, this Court in appraising the powers of the state road commission as to the granting of permits for the laying of pipe lines on public roads should not resort to any statute outside of the comprehensive law embraced in Chapter 17 of the Code. We do not say that said Chapter 17 served to repeal Code, 54-1-5, for the reason that the repeal of a statute by implication is not favored in law. *State* v. *Hinkle, supra.* We hold, first, that Code, 54-1-5, inhibiting the construction and maintenance of pipe lines and storage tanks within one hundred feet of an occupied dwelling house is inapplicable to the Road Law of this State, and that the two statutes should not be read *in pari materia;* and, second, the fact that when the Code of 1931 was enacted, both statutes, in substance, were a part of the statutory law of the State, and with the enactment of the Code of 1931, if the Legislature had intended in enacting the Code of 1931, to make Code, 54-1-5, applicable to cases outside the realm of eminent domain, it should and, in our opinion, would have so legislated.

But plaintiff's counsel, citing the recent case of *Hark* v. *Mountain Fork Lumber Co.,* 127 W. Va. 586, 34 S. E. 2d 348, say that that case is controlling here and under it plaintiff is entitled to the relief he seeks. With this position we do not agree. The *Hark* case is clearly distinguishable from the case set forth in plaintiff's pleadings, for the reasons, first, that the tramway in the *Hark* case was located partly upon the roadbed of a public road for which the public had only an easement and as to which plaintiff Hark was the dominant tenant, and partly on plaintiff's land outside the scope of the easement, thereby constituting a technical trespass on Hark's land and an additional burden on the easement; second, the operation of the tramway by the passage of four logging trains daily, as disclosed by the record in the *Hark* case, resulted in an intermittent blockage of the road past and leading to and from the Hark lands; and, third, in the *Hark* case defendant constructed the tramway with the passive assent of the state road com-

missioner, and did not have the written permit required by Code, 17-16-6.

Under the first ground of distinction, it is to be noted that in the *Hark* case there was no conveyance or formal dedication of the roadway by the owners in fee, and under point 1., syllabus of that case, the public acquired only an easement for a public road. But in the instant case the Thacker deed to the County Court of Wayne County was an absolute grant in fee simple, though the deed provides in the habendum clause that it is "to be used for county road purposes." The consideration recited in the deed, in addition to the one dollar receipted for therein, is "benefits that will accrue to said parties of the first part from the construction of a (or a change in the) County-district road. * * *." The Thacker deed is strikingly similar to that involved in *Killgore* v. *County Court of Cabell County*, 80 W. Va. 283, 92 S. E. 562, in which the recited consideration was six hundred dollars in cash and "the advantages and benefits which will enure to them [the grantors] by reason of the construction of said railroad", which deed provided in the habendum clause that the grant was made "for the construction of a double track of railway, through" grantors' lands. The *Killgore* deed was dated 1870. The railroad company built a railroad on the lands acquired under said deed and operated thereon until 1907, when the location of the railroad tracks was changed, and in 1913 the railway company conveyed the land to the County Court of Cabell County "for the purpose of constructing a county road or highway thereover". Thereafter the Killgore heirs instituted an action in ejectment against the county court on the theory that the Killgore deed conveyed only an easement and the removal of the tracks by the railway company resulted in the reversion of the property to the Killgore heirs. In point 2, syl., of the *Killgore* case, this Court held: "A grant of a tract of land to a railway company by a deed which contains the following clause, 'for the construction of a double track of railway' is not subject to be defeated in case said railway company should cease to use said land for the

purpose mentioned in said deed. Such clause is declaratory of the purpose to which said land is to be applied, and does not create a condition subsequent forfeiting the title of the railroad company for non-compliance therewith"; and at page 286 in the opinion, this Court stated: "We are, therefore, of opinion that this deed conveyed to the Chesapeake & Ohio Railway Company an estate in fee simple absolute in the land therein described." Under the holding in the *Killgore* case, the County Court of Wayne County in the instant case obtained a fee simple title to the land upon which the road was constructed under the Thacker deed, which title became vested in the state road commission, and is not subject to defeasance in the event the road is moved or abandoned. The words "to be used for county road purposes" simply indicated the use to which the land should be put, and did not mean the vesting of a defeasible fee to the land in the county court. To like effect see *Las Posas Water Co.* v. *Ventura County,* 97 Cal. App. 296, 275 P. 817, and *Chouteau* v. *City of St. Louis,* 331 Mo. 781, 55 S. W. 2d 299.

The second ground of distinction appears quite clearly from a comparison of the two cases. The public road in the *Hark* case was narrow. The tramway, unlike the pipe lines in the instant case, occupied the roadbed of a public road, and from the plats, photographs and other evidence in that case the logging trains at and near the Hark land occupied substantially the full width of the traversable part of the public road, so that with the passage of the trains from time to time there became a complete obstruction of the road for other vehicular traffic, which constituted a public nuisance, resulting in special damage to plaintiffs. In the instant case the pipe lines are buried twenty-four inches beneath the surface of the road, and the pleadings do not allege that they are on or within the roadbed of the road; there is no technical trespass because the lines are within the confines of the public road; and there is no additional burden upon an easement because there is no easement to burden.

The third ground of distinction between the *Hark* case and the case at bar appears from a reading of the statement of facts in the *Hark* opinion in connection with Code, 17-16-6.

Plaintiff, having no title to the part of the public road which adjoins his property, and the pipe lines being within the confines of the legal right-of-way thereof, would not be entitled to the injunction he seeks unless the pipe lines constitute a public nuisance which results in substantial injury to him which is other and different from that inflicted upon the public in general, both in degree and character. *Keystone Bridge Co.* v. *Summers,* 13 W. Va. 476; *Talbott* v. *King,* 32 W. Va. 6, 9 S. E. 48; *Pence* v. *Bryant,* 54 W. Va. 263, 46 S. E. 275; *Wees* v. *Coal & Iron Railway Co.,* 54 W. Va. 421, 46 S. E. 166; *Davis* v. *Spragg,* 72 W. Va. 672, 79 S. E. 652; *International Shoe Co.* v. *Heatwole,* 126 W. Va. 888, 30 S. E. 2d 537. Plaintiff in the instant case is simply the owner of property adjoining the public road upon which the nuisance is alleged to be maintained, and his situation is not other and different from that of other property holders whose lands adjoin said road.

The allegation in the amended and supplemental bill to the effect that the pipe line was caused to break on one occasion is based upon the alleged negligence of defendant in the maintenance and operation of the pipe lines. If plaintiff was proximately injured thereby, he, of course, would have his action at law, and such injury would not be the basis of injunctive relief. The fact that one break occurred in the lines is not a proper basis for the conjecture that future breaks will occur. In *Pope Bros. & Co.* v. *Bridgewater Gas Co.,* 52 W. Va. 252, 43 S. E. 87, this Court held that an injunction restraining the drilling of an oil or gas well adjoining plaintiff's land in close proximity to a well on plaintiff's land, should be denied for the reason, as stated on page 256 of the opinion, that "Mere possible, eventual or contingent danger is not enough" to merit injunctive relief. See also *Pennsylvania Co.* v. *Sun Co.,* 290 Pa. 404,

138 A. 909, 55 A. L. R. 873. Nor, in our opinion, is the diminution of the value of property as the result of an alleged public nuisance of itself sufficient to justify the issuance of an injunction. In the *Pennsylvania Co.* case, the Pennsylvania Court refused to enjoin a defendant from erecting gasoline storage tanks on property adjoining plaintiff's property. In that suit plaintiff sought an injunction on the ground that the location and use of the tanks for the purpose of storing gasoline would diminish the value of his property. In that case the Court said, "A mere diminution in value is not sufficient to justify the granting of equitable relief * * *." Of course, where the diminution of property is accompanied by irreparable injury, or a continuous trespass or nuisance, or where it results in a serious interference with the ordinary enjoyment of property, an injunction will lie. *Snyder* v. *Cabell,* 29 W. Va. 48, 1 S. E. 241. But where, as in the instant case, the matter complained of is not a nuisance *per se,* but may become so according to the circumstances and upon a happening in the future, a court of equity will not interfere by injunction. *Chambers* v. *Cramer,* 49 W. Va. 395, 38 S. E. 691. For these reasons we are of the opinion that there is no equity in plaintiff's original and amended and supplemental bills of complaint. In so holding, we do not say that plaintiff is without legal remedy for any alleged negligence in the maintenance and operation of the pipe lines, proximately resulting in damage to his property: we simply hold that he is not entitled in the instant case to injunctive relief.

For the foregoing reasons we reverse the rulings of the circuit court in overruling defendant's demurrers to plaintiff's original and amended and supplemental bills of complaint.

*Rulings reversed.*